**Ninth Circuit No. 25-2911**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

NICOLE CAVICANTE, individually and as Successor in Interest to RANDY MILLER, deceased, and JEREMY CAVICANTE, individually and as Successor in Interest to RANDY MILLER, deceased,

Plaintiffs-Appellees,

v.

CITY OF LOS ANGELES, OFFICER DANIEL NUNEZ, an individual; OFFICER ANTONIO VALASCO, an individual
Defendants-Appellants.

C.D. Cal. Case No. 2:21-CV-06676-KS
On Appeal from the United States District Court for the
Central District of California
District Judge Karen L. Stevenson, Presiding

## APPELLEES' ANSWERING BRIEF

Rodney S. Diggs, Esq. (SBN 274459)
IVIE McNEILL WYATT PURCELL & DIGGS
444 South Flower Street, Suite 3200
Los Angeles, California 90071
Telephone: (213) 489-0028
Facsimile: (213) 489-0552
RDiggs@imwlaw.com

Attorneys for Appellees, Nicole Cavicante, Jermey Cavicante, and Randy L. Miller

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................6

II.   COUNTER-STATEMENT OF ISSUES PRESENTED ............................10

III.  STATEMENT OF FACTS...................................................................10

      The Events Preceding the Fatal Shooting of Randy Miller.........................11

      The Shooting...................................................................................13

      The Injuries Miller Sustained During the Shooting ......................................15

IV.  PROCEDURAL HISTORY ................................................................15

V.   STANDARD OF REVIEW.................................................................18

VI.  SUMMARY OF ARGUMENT.............................................................19

VII. ARGUMENT...................................................................................21

      1.    THE DISTRICT COURT CORRECTLY DENIED QUALIFIED IMMUNITY BECAUSE GENUINE DISPUTES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT...............................21

      A.    LEGAL STANDARDS...................................................................22

          1.    Qualified Immunity Cannot Be Granted Where Genuine Disputes of Material Fact Exist.................................................22

          2.    Fourth Amendment Excessive Force Standard.........................23

      B.    THE USE OF FORCE WAS EXCESSIVE .......................................26

          1.    Severity of Crime.........................................................................26

          2.    Immediacy of the Threat—the Most Critical Factor ...............28

      C.    THE OFFICERS' "SPLIT-SECOND JUDGMENT" DEFENSE FAILS BECAUSE THEIR OWN RECKLESS ACTIONS CREATED THE PERCEIVED EXIGENCY.......................................................32

      D.    THE OFFICERS VIOLATED RANDY MILLER'S CLEARLY ESTABLISHED FOURTH AMENDMENT RIGHT TO BE FREE FROM EXCESSIVE FORCE. ..........................................................34

          1.    Qualified Immunity Cannot Be Granted Where There are Disputed Issues of Material Fact. ............................................34

          2.    The Law Was Clearly Established............................................35

          3.    The Shooting was "Obviously" Excessive. .............................39

          4.    The District Court Failed to Consider the Officers' Violations of Training..................................................................................41

      E.    APPELLANTS' CITED CASES ARE INAPPLICABLE .................42

VIII. CONCLUSION................................................................................43

CERTIFICATE OF COMPLIANCE PURSUANT TO FED. R. APP. 32(a)(7)(c) AND CIRCUIT RULE 32-1........................................................44

STATEMENT OF RELATED CASES UNDER

NINTH CIRCUIT RULE 28-2.6 ...............................................................................45

2

## TABLE OF AUTHORITIES

**Cases**

*A.K.H. v. City of Tustin*, 837 F.3d 1005, 1012 (9th Cir. 2016)................................25

*Adams v. Speers*, 473 F.3d 989, 994 (9th Cir. 2007)...............................................39

*Bernal v. Sacramento Cnty. Sheriff's Dep't*, 73 F.4th 678, 692 (9th Cir. 2023)......25

*Brosseau v. Haugen*, 543 U.S. 194, 197-99 (2004)........................................... 39, 40

*Bryan v. Las Vegas Metropolitan Police Dept.*, 349 Fed.Appx. 132 (2009) ......9, 36

*Coles v. Eagle*, 704 F.3d 624, 629 (9th Cir. 2012).................................................23

*Cruz v. City of Anaheim*, 765 F.3d 1076, 1079 (9th Cir. 2014)..............................29

*Cunningham v. City of Wenatchee*, 345 F.3d 802, 809 (9th Cir. 2003) .................23

*Curnow By and Through Curnow v. Ridgecrest Police*, 952 F.2d 321 (1991) .......37

*Deorle v. Rutherford*, 272 F.3d 1272, 1282-83 (9th Cir. 2001) ....................... 25, 31

*Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1058 (9th Cir. 2003) ...................................................................................... 26, 41

*Elder v. Holloway*, 510 U.S. 510, 516 (1994) .......................................................35

*Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1064 (9th Cir. 2013)....................23

*Espinosa v. City & Cnty. of San Francisco*, 598 F.3d 528, 533 (9th Cir. 2010).....39

*Est. of Anderson v. Marsh*, 985 F.3d 726, 735 (9th Cir. 2021) ..............................18

*Estate of Aguirre v. County of Riverside*, 29 F.4th 624, 628 (9th Cir. 2022)..........24

*Est. of Carreno v. County of Santa Barbara*, 2020 U.S. Dist. LEXIS 45547, at *8 (C.D. Cal. Jan. 25, 2020) ...............................................................................19

*Estate of Clemente Najera-Aguirre*, 2019 U.S. Dist. LEXIS 229033, at *20 ... 7, 21, 22

*Estate of Lopez v. Gelhaus*, 871 F.3d 998, 1021 (9th Cir. 2017...................... 7, 9, 23

*Estate of Najera Aguirre v. Cnty. of Riverside*, 29 F.4th 624, 629 (9th Cir. 2022).40

*Estate of Strickland v. Nevada County*, 69 F.4th 614, 621 (9th Cir. 2023).............37

*Figueroa v. Gates*, 207 F.Supp.2d 1085 (2002))[3] ..............................................38

*George v. Morris*, 736 F.3d 829 (9th Cir. 2013) ...................................................29

*Glenn v. Washington County*, 673 F.3d 864 (9th Cir. 2011) ........................ 9, 25, 42

*Gordon v. Cnty. of Orange*, 6 F.4th 961, 969 (9th Cir. 2021) .................................35

*Graham v. Connor*, 490 U.S. 386, 397 (1989) ................................................ passim

*Hayes v. County of San Diego*, 736 F.3d 1223 (9th Cir. 2013) ...........................9, 38

*Headwaters v. County of Humboldt*, 240 F.3d 1185, 1204 (9th Cir. 2000) ............31

*Hernandez v. City of Huntington Beach*, 798 Fed. Appx. 85, 88 (9th Cir. 2019) ...40

*Hope v. Pelzer*, 536 U.S. 730, 739-41, (2002) .......................................................40

*K.H. Through Murphy v. Morgan*, 914 F.2d 846 (7th Cir. 1990) ..........................40

*Kisela v. Hughes*, 138 S. Ct. 1148 (2018) ..............................................................42

*Knox v. Southwest Airlines*, 124 F.3d 1103, 1109 (9th Cir. 1997) .........................23

*LaLonde v. County of Riverside*, 204 F.3d 947, 953 (9th Cir. 2000) ......................22

*Lombardo v. City of St. Louis*, 594 U.S. 464, 467 (2021) .......................................24

*Longoria v. Pinal County*, 873 F.3d 699, 710 (9th Cir. 2017) ...............................23

*Lowry v. City of San Diego*, 858 F.3d 1248, 1257-58 (9th Cir. 2017) ....................27

*LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1158 (9th Cir. 2000) .......................................34

*Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) .................................... 25, 35

*Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) .......................................................18

*Nelson v. City of Davis*, 685 F.3d 867, 882 (9th Cir. 2012) ...................................31

*Pearson v. Callahan*, 555 U.S. 223, 232 (2009) .....................................................18

*Plumhoff v. Rickard*, 572 U.S. 765 (2014) .............................................................23

*Rice v. Morehouse*, 989 F.3d 1112, 1121 (9th Cir. 2021) .......................................24

*Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021) ...............................................40

*Saucier v. Katz*, 533 U.S. 194, 201 (2001) .............................................................18

*Scott v. Harris*, 550 U.S. 372, 378 (2007) ........................................................ 18, 19

4

*Scott v. Smith*, — F.4th —, 2024 WL 3574971, at \*7 (9th Cir. 2024) .................... 34

*Seidner v. de Vries*, 39 F.4th 591, 599 (9th Cir. 2022) ............................................ 25

*Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1116 (9th Cir. 2017). ............ 24

*Singh v. City of Phoenix*, 124 F.4th 746, 752 (9th Cir. 2024) ................................. 27

*Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1126 (9th Cir. 2021) .......... 25

*Taylor v. Riojas*, 592 U.S. 7, 8-9 (2020) .................................................................. 40

*Tennessee v. Garner*, 471 U.S. 1, 7-12 (1985) .................................... 24, 25, 37, 40

*Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) ......................................................... 18

*Torres v. City of Los Angeles*, 548 F.3d 1197, 1210 (9th Cir. 2008). .................... 22

Torres v. City of Madera, 648 F.3d 1119, 1127 (9th Cir. 2011) ............................. 37

*United States v. Lanier*, 520 U.S. 259, 271 (1997) .................................................. 40

*Villanueva v. California*, 986 F.3d 1158, 1173 (9th Cir. 2021) .............................. 22

*Vos v. City of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018) ...................... 19

*Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir. 2003) .............................. 23

*Wilkinson v. Torres*, 610 F.3d 546, 553 (9th Cir. 2010) ......................................... 23

*Williamson v. City of Nat'l City*, 23 F.4th 1146, 1151 (9th Cir. 2022) .................. 24

*Ziglar v. Abbasi*, 582 U.S. 120, 151-52 (2017) ....................................................... 35

*Zion v. County of Orange*, 874 F.3d 1072, 1076 (9th Cir. 2017) ............................ 26

**Statutes**

42 U.S.C. § 1983 ....................................................................................................... 15

California Civil Code § 52.1 ...................................................................................... 15

## I.   <u>INTRODUCTION</u>

Appellants'/Defendants' interlocutory appeal challenges the District Court's well-reasoned denial of summary judgment and qualified immunity to Los Angeles Police Department Officers Daniel Nunez and Antopnio Velasco in this §1983 excessive force case. The District Court's ruling denying qualified immunity was correct, firmly supported by the record, and should be affirmed [1-ER-0002, 0021, 0022]. After careful review of the evidence, the District Court correctly found numerous genuine disputes of material fact that preclude summary judgment on the Fourth Amendment excessive force claim and correctly determined that qualified immunity was inappropriate where factual disputes exist regarding the reasonableness of the Defendant Officers' conduct. The District Court properly concluded that a reasonable jury could find that "the force employed was greater than is reasonable under the circumstances" [1-ER-0019] and "because [the officer's] entitlement to qualified immunity ultimately depends on disputed factual issues, summary judgement is not presently appropriate." [1-ER-0021].

In their Opening Brief, Appellants apply the wrong facts, ignore undisputed material evidence favorable to Plaintiffs, mischaracterize the District Court's findings, and fail to demonstrate they are entitled to qualified immunity. Appellants improperly seek to have this Court reweigh evidence, resolve factual disputes in their favor, and ignore the clearly established law that prohibited their

conduct under the specific circumstances they confronted on January 27, 2021.The

District Court correctly applied the qualified immunity standard and properly

determined that: (1) viewing the facts in the light most favorable to Plaintiffs, a

reasonable jury could find that Officers Nunez and Velasco violated Miller's

Fourth Amendment rights by using excessive force; and (2) "[g]iven the disputed

facts and the divergent inferences to be drawn from them, the Court cannot

determine on summary judgment that [the Defendant Officers] did not violate a

clearly established constitutional right[.]". [1-ER-0021-0022] (citing *Estate of*

*Clemente Najera-Aguirre*, 2019 U.S. Dist. LEXIS 229033, at *20; Estate of Lopez

v. Gelhaus, 871 F.3d 998, 1021 (9th Cir. 2017 ("Because [the officer's] entitlement

to qualified immunity ultimately depends on disputed factual issues, summary

judgment is not presently appropriate."). The District Court properly identified

material factual disputes regarding whether the Defendant Officers' use of deadly

force was objectively reasonable, including disputes about what the officers

actually observed, whether Miller posed an imminent threat of death or serious

bodily injury at the time of the shooting, whether the Defendant Officers gave

Miller adequate warnings, identified themselves as law enforcement officers, and

gave Miller no time to comply, and whether less intrusive alternative measures

were available rather than shooting.

Critically, it is undisputed that neither Nunez nor Velasco saw a knife or any

weapon in Miller's hands at any point. [2-ER-0209, at 14:16-19; 2-ER-0189, at 8:11-13; 3-ER-0299, at 22:16-15; 3-0301, at 30:1-6]. This undisputed fact alone demonstrates that the Defendant Officers' decision to use deadly force—made within eleven seconds of arrival and without giving Miller a verbal warning that deadly force would be used or any meaningful opportunity to comply—was not objectively reasonable under clearly established Fourth Amendment law. The Defendant Officers cannot claim qualified immunity by relying on assumptions, radio dispatch information, and interpretations of movements when they admitted that they never saw the very weapon that supposedly justified their use of deadly force.

Appellants' attempts to obtain qualified immunity fail for multiple reasons. First, there are genuine disputes of material fact regarding the circumstances the Defendant Officers confronted, including what they actually observed, whether Miller had an opportunity to surrender, and whether there was an imminent threat of death or serious bodily injury. Second, even accepting Appellants' version of events, clearly established law prohibited the use of deadly force under these specific circumstances where the Defendant Officers never saw a weapon, never gave adequate warnings, never identified themselves as law enforcement officers or leave the police lights or siren activated once they approached the scene, never gave Miller time to comply, never warned that deadly force would be used, and

shot Miller in the back within seconds of arrival. Third, Appellants' violation of their own training with respect to the use of deadly force supports a denial of qualified immunity.

The Ninth Circuit has repeatedly held that officers are not entitled to qualified immunity when they use deadly force without seeing a weapon in a suspect's hands, without identifying themselves as officers, without giving adequate warnings, and without allowing the suspect an opportunity to surrender— particularly when the suspect is shot in the back and poses no immediate threat of death or serious bodily injury to the officers themselves. *See, e.g.*, *Estate of Lopez*, 871 F.3d 998; *Hayes v. County of San Diego*, 736 F.3d 1223 (9th Cir. 2013); *Glenn v. Washington County*, 673 F.3d 864 (9th Cir. 2011); *Bryan v. Las Vegas Metropolitan Police Dept.*, 349 Fed.Appx. 132 (2009)). In their Opening Brief, Appellants ignore these controlling authorities and instead attempt to manufacture qualified immunity by misstating the factual record, improperly asking this Court to resolve factual disputes in their favor, and mischaracterizing clearly established law.

For the reasons set forth herein, the District Court's denial of qualified immunity and denial of summary judgment as to Plaintiffs' Fourth Amendment excessive force claim was correct and should be affirmed and must be resolved by a jury.

## II.   COUNTER-STATEMENT OF ISSUES PRESENTED

1. Whether the District Court correctly held that genuine disputes of material fact preclude summary judgment with respect to whether Officers Nunez and Velasco's use of deadly force was objectively unreasonable under the Fourth Amendment.

2. Whether the District Court correctly denied qualified immunity to Officer Velasco on Plaintiffs' Fourth Amendment excessive force claim where Officer Velasco fired three rounds into Randy Miller's back within eleven seconds of arrival without seeing a weapon in Miller's hands and without giving Miller a meaningful opportunity to surrender.

3. Whether the District Court correctly denied qualified immunity to Officer Nunez on Plaintiffs' Fourth Amendment excessive force claim where Officer Nunez fired one round into Randy Miller's back within eleven seconds of arrival without seeing a weapon in Miller's hands and based solely on his partner's statement.

## III.   STATEMENT OF FACTS

During the late evening hours of January 27, 2021, near the corner of 40th Place and Vermont in Los Angeles, California, decedent Randy "Memphis" Miller ("Miller") was inside a parked vehicle with his girlfriend, Patricia Monk ("Monk").

10

While inside Monk's vehicle, Miller and Monk's feet dangled out the front driver's door as Miller laid parallel across the front and passenger seats on top of Monk when he was shot and killed by Los Angeles Police Department Officers Daniel Nunez ("Nunez") and Antonio Velasco ("Velasco"). At the time of the shooting, Miller was unarmed when Nunez fired one round and Velasco fired three rounds into Miller's back.

### *The Events Preceding the Fatal Shooting of Randy Miller*

The events that preceded the shooting of Miller are largely undisputed. On the day in question, January 27, 2021, at approximately 10:23 p.m., on or around the area of 40th Place and Vermont Ave., in the City and County of Los Angeles, a transient, George Brown, dialed 9-1-1 claiming that he was punched in the mouth by a man named "Memphis" (aka Decedent, Randy Miller). [2-ER-0089 at No.1; 2-ER-0175[1], 0179[2]. Mr. Brown described Miller as a black man wearing a black jacket, jeans, and a baseball cap, and stated that Miller was drunk. [2-ER-0090 at No. 4] Mr. Brown further informed 911 that Miller was beating up his girlfriend across the street near the mini mart and was holding a knife. [2-ER-0089 at No. 2;

---

[1] Appellees reference Appellants Motion to Transmit Physical Evidence [Dkt 19]. Appellees lodged Nunez's BWC, which is also Plaintiffs-Appellees Trial *Exhibit 1*, Defendants-Appellants Trial *Exhibit B* and **ER-175**.
[2] Appellees reference Appellants Motion to Transmit Physical Evidence [Dkt 19]. Appellants lodged Velasco's BWC, which is also Plaintiffs-Appellees Trial *Exhibit 4*, Defendants-Appellants Trial *Exhibit F*, and **ER-179**.

2-ER-0175, 0179]. Brown did not report that Miller was stabbing any person. [*Id*].

At approximately 10:27 p.m., Velasco and Nunez responded to a radio call stating: "3A73 responding Code 3 from Vernon and Hoover to 40th Place and Vermont. Southwest units responding to 40th Place and Vermont, suspect is a male Black, wearing a dark baseball cap, black jacket, [intoxicated/drunk person], armed with a knife. Previously assaulted the [reporting party] and now attempting to assault female next to the grocery store." [2-ER-0090 at No. 5; 2-ER-0175, 0179].

When the Defendant Officers observed the two pairs of feet hanging outside the driver's side door of the Impala, they failed to properly confirm that the people inside the Impala were the subject of the call. [2-ER-0093 at No. 22; 2-ER-0175, at 3:20-3:32; 2-ER-0094 at No. 24]. First, the subject was described as wearing black jeans, whereas Miller clearly had on blue track-pants with white stripes on the side. [2-ER-0090 at No. 5; 2-ER-0093 at No. 22; 2-ER-0175, at 3:20-3:32]. Second, the subject of the call was described as a Black male and a woman. The Defendant Officers did not know the race or gender of the individuals inside the Impala until after Miller and Monk were outside the vehicle. [2-ER-0090 at No. 5; 2-ER-0175, 0179; 2-ER-0208, at 13:22-25; 2-ER-0214, at 29:11-17]. Third, the subject of the call was described wearing a black baseball cap, whereas Miller did not have on a baseball cap. [2-ER-0090 at No. 5; 2-ER-0175, 0179]. Therefore, it was

unreasonable for the Defendant Officers to approach the Impala with a mindset that the male inside the Impala was the subject of the radio call and was armed.

Prior to fatal shooting Miller, the Defendant Officers failed to announce themselves as police officers to an individual whose back was facing them, failed to warn Miller that deadly force would be used, failed to evaluate whether Miller posed a threat, given that they did not observe a weapon, and prematurely deactivated their patrol siren to "create the element of surprise," which further prevented Miller to be aware of a police officer's presence. [2-0091, at No. 16; 2-ER-0210-211; 2-ER-0175, 0179]. Furthermore, the Defendant Officers approached the scene with misinformation. Nunez improperly assumed that Miller was actively stabbing Monks and had already assaulted the 911 caller with a knife. [2-ER-0448-0449, at 18:13-19:2]. The radio call broadcasted "a man with a knife," and Mr. Brown informed the 911 operator that Miller punched him in his face. [2-ER-0090 at No. 5; 2-ER-0175, 0179]. There was no mention of Miller ever stabbing anyone.

### ***The Shooting***

Upon arriving at the area of 40th Place and Vermont, Nunez reconfirmed, "What was the description? Male Black?" I don't see anyone on this side. It's a grocery store, right?" [2-ER-0092 at No. 18; 2-ER-0077; 2-ER-0175 at 3:00-3:15]. As Nunez and Velasco entered the block of 40th Place and Vermont, they observed

13

two pairs of feet hanging outside the driver's door of the Impala. [2-ER-0175 at 3:23-3:26; 2-ER-179]. Immediately, Velasco stopped his patrol vehicle slightly parallel to the Impala. Velasco exited his patrol unit with his gun unholstered because he alleged that the radio call "initially indicated it was an ADW in process, and then it was upgrading to an ADW stabbing." [2-ER-0206-0270, at 11:19-12:1]. However, there is no evidence that the radio call was upgraded to an "ADW stabbing" [2-ER-0175, 0179]. Nunez exited the passenger side door of the patrol vehicle with his flashlight in his left hand and his department-issued firearm in this right. [2-ER-0175 at 3:23-3:32]; As the officers walked closer to the Impala, the fatal shooting occurred as follows: Nunez and Velasco approach the Impala shouting, "Hey, hey, let me see your hands…get up!" [2-ER-0175 at 3:20-3:35]. Velasco shouted, "He's stabbing her," [2-ER-0175, 0179] followed by multiple rounds fired into the Impala – shooting Miller four times in the back while he was on top of Monks. [3-ER-0317-0338].

After the shooting, Monks stated that she suffered no serious injuries and did not need any medical attention. [2-ER-0101, at No. 55; 2-ER-0281-0282, at 62:10-63:8]. Monks stated that when she was in the Impala, all she could see is bright lights and then a "pop." [2-ER-0101, at No. 52; 2-ER-0257, at 38:5-9]. When asked if Miller reacted when the officers said, "show me your hands," Monks replied, "I don't think he really had that much time really. It happened too fast."

14

[2-ER-0101, at No. 53; 2-ER-0242, at 25:13-20]. Monks further stated that he [Miller] just froze and just "pow pow." ER-0244[*Id*].

### *The Injuries Miller Sustained During the Shooting*

The medical examiner determined the manner of death to be a homicide. [3-ER-0344]. Miller suffered four (4) gunshot wounds to his back. Gun shot wound #1 – left upper back [3-ER-0318]; Gun shot wound #2 – left back [3-ER-0318-0319]; Gun shot wound #3 – left lower back [3-ER-0319-0320]; Gun shot wound #4 – right back [*Id*]; and sharp force trauma – an incision across his nose [2-ER-0102, at Nos. 56, 57; 3-ER-0318-0324; 3-ER-0346]. The sharp force trauma is described as an incision across the bridge of his nose extending from approximately the right intercanthal fold across the bridge curving down to the left ala measuring 2 1/8 inches in length with a greatest depth of ¼ of an inch. [3-ER-0319; 3-ER-0346].

When Nunez was asked if he noticed any scarring or cuts or bruises on Miller's face after handcuffing him, Nunez replied, no. [2-ER-0102-0103, at No. 58; ER-0300, at 28:11-21]. gun assumed the blood on Miller's face was from the gun shots. [2-ER-0103, at No. 59; 3-ER-0212, at 22:19-23]. It is clear that Miller was the one being stabbed with a knife/blade as Monk suffered no stab wounds.

## IV.    PROCEDURAL HISTORY

On December 24, 2024, Plaintiffs Nicole Cavicante, Jeremy Cavicante and

Randy L. Miller filed a First Amended Complaint ("FAC") [Dkt. 58]. The FAC alleged six causes of action: (1) Violation of 42 U.S.C. § 1983 - Fourth Amendment Excessive Force; (2) Violation of 42 U.S.C. § 1983 - Fourteenth Amendment Substantive Due Process/Interference with Familial Relationship; (3) Violation of 42 U.S.C. § 1983 - Custom, Practice and/or Policy (*Monell* claim); (4) Wrongful Death (Based on Battery); (5) Wrongful Death (Based on Negligence); and (6) Violation of California Civil Code § 52.1 (Bane Act). Defendants filed their Answer to the FAC on December 24, 2024, asserting qualified immunity for Officers Velasco and Nunez. On February 24, 2025, the parties stipulated to dismiss Plaintiffs' Third Cause of Action for violation of custom, practice, and/or policy under 42 U.S.C. § 1983 (the *Monell* claim) against the City of Los Angeles.

On February 26, 2025, Defendants Officers Velasco and Nunez filed a Motion for Summary Judgment seeking judgment on all remaining claims and asserting entitlement to qualified immunity on the federal civil rights claims. Plaintiffs timely filed their Opposition to the Motion on March 5, 2025. Defendants filed their Reply on March 12, 2025. The District Court held a hearing on the Motion for Summary Judgment on March 26, 2025. After taking the matter under submission, the District Court issued its Memorandum Opinion and Order on April 29, 2025[1-ER-002-0028].

In its Order, the District Court granted summary judgment as to Plaintiffs'

16

Fourteenth Amendment familial association claim (Second Cause of Action), finding that Officers Velasco and Nunez were entitled to qualified immunity on that claim. The District Court denied summary judgment as to Plaintiffs' Fourth Amendment excessive force claim (First Cause of Action), holding that genuine disputes of material fact precluded a finding that the officers' use of deadly force was objectively reasonable as a matter of law. The District Court specifically held that "there are genuine disputes of material fact as to whether the Defendant Officers used excessive force when they shot and killed Mr. Miller." [1-ER-0027].

The District Court concluded that qualified immunity and summary judgment was not appropriate because a reasonable jury could find that the officers violated Miller's right to be free from excessive force under the specific circumstances of this case, and disputed issues of material fact precluded finding as a matter of law that Miller's right was not clearly established at the time of the shooting.

On May 1, 2025, Defendants Officers Velasco and Nunez filed a Notice of Appeal challenging only the District Court's denial of qualified immunity on the Fourth Amendment excessive force claim. The District Court stayed all proceedings pending resolution of the interlocutory appeal.

## V.  STANDARD OF REVIEW

This Court reviews de novo the District Court's denial of summary judgment based on qualified immunity. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *Est. of Anderson v. Marsh*, 985 F.3d 726, 735 (9th Cir. 2021). For purposes of this de novo review, the Court must view the facts in the light most favorable to Plaintiffs, the party who opposed summary judgment, and draw all reasonable inferences in Plaintiffs' favor. *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Scott v. Harris*, 550 U.S. 372, 378 (2007). In reviewing the denial of qualified immunity, this Court must determine: (1) whether, taking the facts in the light most favorable to Plaintiffs, the Defendant Officers' conduct violated a constitutional right; and (2) whether, taking Plaintiffs' facts as true, that right was clearly established at the time of the incident. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

The Court "may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan*, 572 U.S. at 656. This standard applies with particular force in qualified immunity cases involving disputed factual circumstances. *Id*. at 656-57 ("In holding that [the officer] was entitled to summary judgment, the Fifth Circuit failed to view the evidence at summary judgment in the light most favorable to [the plaintiff] with respect to the central facts of this case."). The Court must accept as true the plaintiff's version of the facts and may

18

not credit the defendant's version of events. *Id*. "Unless a plaintiff's account is 'so utterly discredited' or 'blatantly contradicted' by the video evidence, the 'mere existence of video footage ... does not foreclose a genuine factual dispute as to the reasonable inferences that can be drawn from that footage.'" *Est. of Carreno v. County of Santa Barbara*, 2020 U.S. Dist. LEXIS 45547, at *8 (C.D. Cal. Jan. 25, 2020) (citing *Vos v. City of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018)); *see Scott v. Harris*, 550 U.S. at 380.

## VI.   <u>SUMMARY OF ARGUMENT</u>

The District Court correctly denied qualified immunity because the record, viewed in the light most favorable to the Plaintiffs, is replete with genuine disputes of material fact regarding the objective reasonableness of the Defendant Officers' use of deadly force. This Court should affirm. A reasonable jury could easily conclude that Officers Nunez and Velasco violated the Fourth Amendment by shooting Miller in the back when they never saw a weapon and when Miller did not pose an imminent threat of death or serious bodily injury to any person. With respect to the second prong of qualified immunity, the law was clearly established in January 2021 that using deadly force against a suspect who is not seen to be armed, is not advancing on officers, and does not pose an immediate threat of death or serious bodily injury is unconstitutional. Officers may not shoot a suspect in the back within eleven seconds of arrival without seeing a weapon, without

19

giving adequate warnings, and without allowing the suspect an opportunity to surrender.

Summary judgment was properly denied as to the Fourth Amendment excessive force claim because there are material disputes regarding whether Miller posed an imminent threat of death or serious bodily injury at the moment the officers fired their weapons, whether the officers gave Miller adequate warnings and opportunity to surrender, and whether less intrusive alternatives were available. Neither Velasco nor Nunez saw a knife or any weapon in Miller's hands or on his person before shooting him. Both officers relied solely on assumptions, radio dispatch information, and their subjective interpretation of Miller's movements rather than visual confirmation of an actual threat.

The District Court properly determined that a reasonable jury could find that the officers' decision to use deadly force—made within eleven seconds of arrival and without giving Mr. Miller a verbal warning or any meaningful opportunity to comply—was not objectively reasonable under the Fourth Amendment. The physical evidence showing all four shots struck Miller in the back specifically supports that he did not pose an imminent threat of death or serious bodily injuries to the Defendant Officers, to Monk or to any other person, when they fired. The Appellants are improperly asking the Ninth Circuit to re-weigh evidence and resolve factual disputes in their favor, which is not the function of an appellate

20

court on interlocutory review. The District Court's order should be affirmed.

## VII.  ARGUMENT

## 1.  THE DISTRICT COURT CORRECTLY DENIED QUALIFIED IMMUNITY BECAUSE GENUINE DISPUTES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT

The District Court properly applied established Ninth Circuit precedent in denying qualified immunity. As the District Court explained, qualified immunity and summary judgment cannot be granted where there are disputed issues of material fact surrounding whether a use of deadly force was excessive.  On summary judgment, the District Court must view the facts in the light most favorable to the non-moving party and construe all reasonable inferences in the non-moving party's favor. Defendants-Appellants argue that the law was not clearly established based on their version of the events, which cannot be accepted as true at this stage. The District Court explained:

> The parties fervently dispute whether Mr. Miller posed a threat to Ms. Monks or the Defendant Officers on the night in question. On the one hand, if the jury were to find, for instance, that the Defendant Officers reasonably believed that Mr. Miller possessed a knife and was using it to attack Ms. Monks, then this becomes "far from an obvious case in which any competent officer would have known that shooting [Mr. Miller] to protect [Ms. Monks] would violate the Fourth Amendment." Id. On the other hand, if Plaintiffs' version of the facts prevails and the jury concludes that Mr. Miller posed no imminent threat to Ms. Monks, then the Defendant Officers' use of deadly force becomes "an 'obvious case' involving the unreasonable use of deadly force against a non-threatening suspect." *Estate of Clemente Najera-Aguirre v. County of*

21

*Riverside*, No. ED CV 18-762-DMG (SPx), 2019 U.S. Dist. LEXIS 229033, at \*20 (C.D. Cal. Nov. 15, 2019) (quoting *White*, 580 U.S. at 80); *Zion*, 874 F.3d at 1076 (holding that it is clearly established and beyond debate that "the use of deadly force against a non-threatening suspect is unreasonable").

Given the disputed facts and the divergent inferences to be drawn from them, the Court cannot determine on summary judgment that [the Defendant Officers] did not violate a clearly established constitutional right[.]" *Estate of Clemente Najera-Aguirre*, 2019 U.S. Dist. LEXIS 229033, at \*20; *Estate of Lopez*, 871 F.3d at 1021 ("Because [the officer's] entitlement to qualified immunity ultimately depends on disputed factual issues, summary judgment is not presently appropriate."); *Hughes*, 841 F.3d at 1090 (denying summary judgment where the "application of qualified immunity" "depend[ed] upon the facts as determined by a jury").

ER-0021.

## A. LEGAL STANDARDS

### 1. *Qualified Immunity Cannot Be Granted Where Genuine Disputes of Material Fact Exist.*

A defendant is entitled to qualified immunity as a matter of law only if, taking the facts in the light most favorable to the nonmoving party, he or she did not violate any clearly established constitutional right. *Torres v. City of Los Angeles*, 548 F.3d 1197, 1210 (9th Cir. 2008). Where the material facts are disputed, the case must proceed to trial. *Id.*; *LaLonde v. County of Riverside*, 204 F.3d 947, 953 (9th Cir. 2000). The mere claim that qualified immunity applies does not alone defeat a Fourth Amendment claim when there are genuine disputes of material fact. *Villanueva v. California*, 986 F.3d 1158, 1173 (9th Cir. 2021);

22

*Longoria v. Pinal County*, 873 F.3d 699, 710 (9th Cir. 2017) ("Where the facts are disputed, their resolution and determinations of credibility 'are manifestly the province of a jury.'"); *Estate of Lopez v. Gelhaus*, 871 F.3d 998 (9th Cir. 2017) ("summary judgment in favor of moving defendants is inappropriate where a genuine issue of material fact prevents a determination of qualified immunity until after trial on the merits."); *Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir. 2003) ("Where the officers' entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor, . . . summary judgment is not appropriate"); *Cunningham v. City of Wenatchee*, 345 F.3d 802, 809 (9th Cir. 2003); *Knox v. Southwest Airlines*, 124 F.3d 1103, 1109 (9th Cir. 1997). This Court reviews de novo whether the factual disputes identified by the district court are, in fact, material to the qualified immunity analysis. *Plumhoff v. Rickard*, 572 U.S. 765 (2014); *Wilkinson v. Torres*, 610 F.3d 546, 553 (9th Cir. 2010).

Where genuine issues of material fact exist, a court must address a claim of qualified immunity by resolving all factual disputes in the non-moving party's favor. *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1064 (9th Cir. 2013); *Coles v. Eagle*, 704 F.3d 624, 629 (9th Cir. 2012).

### 2. *Fourth Amendment Excessive Force Standard*

Claims of excessive force are analyzed under the objective reasonableness standard of the Fourth Amendment as set forth in *Graham v. Connor*, 490 U.S.

23

386, 397 (1989), and *Tennessee v. Garner*, 471 U.S. 1, 7-12 (1985). *See also Lombardo v. City of St. Louis*, 594 U.S. 464, 467 (2021). The objective reasonableness of such conduct is assessed by balancing the nature and quality of the intrusion on Fourth Amendment rights against the government's countervailing interest in the force used. *Estate of Aguirre v. County of Riverside*, 29 F.4th 624, 628 (9th Cir. 2022). In assessing "whether an officer's actions were objectively reasonable, [the court] consider[s]: '(1) the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted, (2) the government's interest in the use of force, and (3) the balance between the gravity of the intrusion on the individual and the government's need for that intrusion.'" *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1151 (9th Cir. 2022). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396; *see Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). An officer's subjective intent or motivation is not relevant to the reasonableness inquiry. *See Graham*, 490 U.S. at 397; *Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1116 (9th Cir. 2017).

In assessing the governmental interest in the use of force, the court must consider the three non-exclusive factors set forth in *Graham*. *See Williamson*, 23 F.4th at 1153; *Rice v. Morehouse*, 989 F.3d 1112, 1121 (9th Cir. 2021). The three

*Graham* factors are: (1) the severity of the crime at issue; (2) whether the individual posed an immediate threat to the safety of the officers or others; and (3) whether the individual was actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396; *Seidner v. de Vries*, 39 F.4th 591, 599 (9th Cir. 2022). The Ninth Circuit has repeatedly emphasized that the most important *Graham* factor is whether the individual posed an immediate threat to the safety of the officers or others. *Bernal v. Sacramento Cnty. Sheriff's Dep't*, 73 F.4th 678, 692 (9th Cir. 2023); *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc).

The *Graham* factors, however, are not exclusive. Other relevant factors include the availability of less intrusive force, whether proper warnings were given, and whether it should have been apparent to the officers that the subject of the force used was mentally disturbed. *See Glenn v. Washington County*, 673 F.3d 864, 872 (9th Cir. 2011); *Deorle v. Rutherford*, 272 F.3d 1272, 1282-83 (9th Cir. 2001). When deadly force is at issue, the court must also consider how quickly the officer used deadly force after encountering the individual. *A.K.H. v. City of Tustin*, 837 F.3d 1005, 1012 (9th Cir. 2016). Deadly force may only be used if the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others. *Tennessee v. Garner*, 471 U.S. at 3; *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1126 (9th Cir. 2021). The use of deadly force against a non-threatening suspect is unreasonable.

*Zion v. County of Orange*, 874 F.3d 1072, 1076 (9th Cir. 2017).

### B.     THE USE OF FORCE WAS EXCESSIVE

The District Court correctly determined that when the evidence is viewed in the light most favorable to Plaintiffs, genuine disputes of material fact preclude a finding that the Defendant Officers' use of deadly force was objectively reasonable under the *Graham* factors. The District Court also correctly determined that "a reasonable jury could conclude that "the force employed was greater than is reasonable under the circumstances." (citing *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1058 (9th Cir. 2003)). ER-0019.  This Court should affirm.

No reasonable officer in Velasco's position could believe it was lawful to shoot Miller three times in the back within eleven seconds of arrival, without seeing a weapon, without announcing himself as a police officer, and without giving Miller any meaningful opportunity to show his hands or surrender. Likewise, no reasonable officer in Nunez's position could believe it was lawful to shoot Miller in the back based solely on his partner's statement, "He's stabbing her!" when Nunez himself never saw a weapon and Miller had been given no opportunity to comply with commands.

### 1.     *Severity of Crime*

The "severity of the crime" factor relates to the initial crime prompting

26

police response. *See, e.g.*, *Lowry v. City of San Diego*, 858 F.3d 1248, 1257-58 (9th Cir. 2017). "Even when a suspect has … committed a serious crime prior to an officer's arrival, … a jury could discount the severity of the suspect's purported crimes when the suspect is … not engaged in felonious conduct when the officer arrives." *Singh v. City of Phoenix*, 124 F.4th 746, 752 (9th Cir. 2024). In this case, the Defendant Officers were responding to an unconfirmed 911 report from a third party who never personally saw a weapon and reported information based on what he had been told, not what he observed. The Defendant Officers did not observe Miller with any weapon and did not observe any felonious conduct themselves when they arrived at the scene.

Further, the Defendant Officers did not know whether the individuals inside the Impala were the subjects of the 911 call. Indeed, as described above, Miller did not match the description provided in the radio dispatch. The dispatch described the suspect as wearing black jeans, a black hat, and a black jacket, but the Defendant Officers could not determine the race or clothing of the individuals inside the Impala when they arrived. [2-ER-0099, at No. 44; 2-ER-0214, at 29:11-17]. The Defendant Officers never verified that the person inside the vehicle was the suspect described in the radio call before using deadly force. In fact, Velasco testified that he could not see Miller or Monk's face upon approaching the vehicle. [2-ER-0208, at 13:22-25]. This failure to verify the identity of the suspect before

27

shooting demonstrates that the severity of the suspected crime alone cannot justify the immediate use of deadly force without further investigation.

### 2. *Immediacy of the Threat—the Most Critical Factor*

Whether Miller posed an immediate threat of death or serious bodily injury at the time of the shots is the most critical factor, and it overwhelmingly weighs in favor of Plaintiffs. Here, a reasonable jury could easily find that Miller posed no immediate threat to the officers or to Monk at the moment the officers fired their weapons.

### a. The officers never saw a knife or any weapon in Miller's hands

It is undisputed that neither Velasco nor Nunez saw a knife or any weapon in Mr. Miller's hands at any point before, during, or after the shooting. This fact is fatal to the Defendant Officers' qualified immunity defense. Velasco admitted in his deposition: "I could not make out if he was holding anything…" Nunez similarly testified at his deposition that he did not see a weapon in Miller's hand. [3-ER-0299, at 22:15-16]. Nunez further testified at his deposition that prior to the shooting, Velasco never informed him that he saw a knife or any weapon in Miller's hand. [3-ER-301, at 30:1-6].

### b. Velasco's statement that Miller was "stabbing" Monks was a subjective assumption, not an objective fact

Velasco shouted, "He's stabbing her!" before firing his weapon. However,

28

this statement was not based on Velasco actually seeing a knife or observing an actual stabbing. Rather, it was Velasco's subjective interpretation of movements he observed, combined with the radio dispatch information. Velasco admitted that he based his belief that Mr. Miller was armed solely on: (1) the radio call describing the suspect as armed with a knife; (2) what he believed was blood on Monks; and (3) the "elevated position" and "stabbing motions" he observed. None of these factors constitute visual confirmation of an actual weapon or an actual stabbing.

In *George v. Morris*, 736 F.3d 829 (9th Cir. 2013), the Ninth Circuit held that in cases where the best witness about what happened before a shooting has died, the decedent's version of events may be constructed circumstantially from competent expert and physical evidence, as well as from inconsistencies in the testimony of law enforcement. *Id*. at 1196. The court emphasized that courts "cannot simply accept what may be a self-serving account by the police officer." *Cruz v. City of Anaheim*, 765 F.3d 1076, 1079 (9th Cir. 2014).

### c. The "hammer-punch" motion is ambiguous and does not equate to a deadly threat

Velasco described the motion he observed as "a hammer-punch with his fist curled up, which would be consistent with someone armed with a knife." [2-ER-0209]. However, a "hammer-punch" motion is equally consistent with someone punching or striking without a weapon. The ambiguity of this movement,

combined with the officers admitted inability to see Miller's hands or any weapon, demonstrates that the officers' interpretation was speculative rather than based on objective facts establishing an imminent threat. Plaintiffs' expert Jeffrey Noble testified that the officers' use of force was based on a subjective belief rather than an objective belief when they shot Miller. Mr. Noble specifically opined that "because an officer receives a call that is an ADW, or something that involves a knife or some other kind of weapon, it doesn't mean that is actually what you are going to find out when an officer gets there to investigate." [3-ER-0369].

### d. Miller was not given a verbal warning or any opportunity to comply or surrender

The entire sequence from the Defendant Officers' arrival to the first shot fired took only eleven seconds. Only approximately three to five seconds elapsed from the officers' first verbal command to the first shot fired. The officers shouted, "Let me see your hands!" three times total before Velasco yelled, "He's stabbing her!" and the shooting commenced. This timeline demonstrates that Miller was given no meaningful opportunity to respond to the officers' commands or to show his hands before the officers opened fire. The officers did not give any specific commands such as "drop the knife" or "put your hands up." It is undisputed that the officers did not issue any verbal warning that they were prepared to use deadly force prior to shooting. The officers also never announced themselves as police

30

officers.

As the Ninth Circuit has held, "[p]olice are 'required to consider what other tactics if any were available to effect the arrest.'" *Headwaters v. County of Humboldt*, 240 F.3d 1185, 1204 (9th Cir. 2000). Police officers are trained to provide warnings prior to using force where feasible, and the failure to give such a warning is a factor to consider in determining whether the force was excessive. *See Nelson v. City of Davis*, 685 F.3d 867, 882 (9th Cir. 2012); *Deorle v. Rutherford*, 272 F.3d 1272, 1284 (9th Cir. 2001).

### e. The immediacy of the perceived threat is disputed.

A reasonable jury could find that even if Miller was engaged in an altercation with Monks, there was no indication that Monks faced imminent death or serious bodily injury at the precise moment the officers fired their weapons. While any assault is serious, the absence of stab wounds raises a factual question about whether the officers' interpretation that Miller was actively stabbing Monks with a knife was accurate.

### 3. *Whether Miller was Resisting Arrest*

With respect to the last *Graham* factor, a reasonable jury could easily find that Miller was not actively resisting arrest or fleeing from the officers when they shot him. Miller was engaged in an altercation with Monks inside the car before police arrived. There is no evidence that Miller was resisting the officers'

31

commands or attempting to flee from them. Rather, Miller had his back to the officers, and the officers did not identify themselves as police officers. The officers arrived at the scene and immediately shouted commands to Miller. Within three to five seconds of the first command, the officers opened fire. This extremely brief timeframe raises a genuine dispute of fact about whether Miller had any opportunity to comply with the officers' commands before being shot.

Nunez himself testified that if a person who is in a laying down position is rising up in response to a command to show hands, that would be in compliance with the command to show his hands. This testimony supports a reasonable inference that Miller may have been attempting to comply with the officers' commands when they shot him, rather than resisting or fleeing. [3-ER-0303, at 41:18-24].

## C. THE OFFICERS' "SPLIT-SECOND JUDGMENT" DEFENSE FAILS BECAUSE THEIR OWN RECKLESS ACTIONS CREATED THE PERCEIVED EXIGENCY

Appellants rely heavily on the "split-second judgment" doctrine articulated in *Graham v. Connor* to justify their use of deadly force. However, the Ninth Circuit has made clear that this doctrine does not shield officers from liability when their own reckless actions create the very emergency, they claim necessitated the use of deadly force. The "split-second judgment" defense is unavailable when

officers rush in without a tactical plan, fail to issue warnings, and escalate a situation unnecessarily. The Ninth Circuit scrutinizes officer-created exigency and has repeatedly held that officers cannot benefit from qualified immunity when they create the dangerous circumstances that purportedly justify their use of force.

Here, the officers' approach created the perceived exigency. The officers fired four rounds into Miller's back within eleven seconds of arriving on scene. The officers never announced themselves as police officers. The officers never gave adequate warnings or an opportunity for Miller to surrender. The officers never attempted any less intrusive alternatives, such as verbal de-escalation, despite having the time and opportunity to do so. The officers' choice to approach silently with guns drawn and open fire within seconds was a reckless tactic that created the very "emergency" they now use to justify their actions. A reasonable jury could find that if the officers had announced themselves as police, given adequate warnings, and allowed Miller time to respond, the use of deadly force would not have been necessary.

Plaintiffs' expert Jeffrey Noble opined that the officers should have given commands identifying themselves as police officers once they approached the vehicle. Mr. Noble noted that the officers said, "hey, let me see your hands" but did not issue the command "put your hands up" or identify themselves, and that was the only command given before shooting. [3-ER-0379].

33

## D. THE OFFICERS VIOLATED RANDY MILLER'S CLEARLY ESTABLISHED FOURTH AMENDMENT RIGHT TO BE FREE FROM EXCESSIVE FORCE.

The District Court properly denied qualified immunity because genuine disputes of material fact preclude summary judgment and because clearly established law prohibited the officers' conduct under the specific circumstances of this case.

### 1. Qualified Immunity Cannot Be Granted Where There Are Disputed Issues of Material Fact.

Regardless of whether Plaintiffs can point to a factually analogous case, the District Court was correct in holding that "[g]iven the disputed facts and the divergent inferences to be drawn from them, the [District Court] cannot determine on summary judgment that [the Defendant Officers] did not violate a clearly established constitutional right[.]" [1-ER-0021]. Therefore, this case must be decided by a jury.

As this Court recently stated, "[t]hough officers must be fairly on notice that their conduct was unconstitutional, defining the 'right allegedly violated' in too much detail allows 'officials, and future defendants, to define away all potential claims.'" *Scott v. Smith*, — F.4th —, 2024 WL 3574971, at *7 (9th Cir. 2024) (citing *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1158 (9th Cir. 2000)); *see also Ohlson*, 9

34

F.4th at 1166–67 (there need not be a case "directly on point"); *Gordon v. Cnty. of Orange*, 6 F.4th 961, 969 (9th Cir. 2021) (advising against casting an allegedly violated right too particularly); *Ziglar v. Abbasi*, 582 U.S. 120, 151-52 (2017) ("an officer might lose qualified immunity even if there is no reported case "directly on point."). This Court has been "particularly mindful of this principle in the context of Fourth Amendment cases, where the constitutional standard—reasonableness—is always a very fact-specific inquiry. If qualified immunity provided a shield in all novel factual circumstances, officials would rarely, if ever, be held accountable for their unreasonable violations of the Fourth Amendment." *Mattos*, 661 F.3d at 442.

## 2. The Law Was Clearly Established

The Supreme Court has recently expressed that a court of appeals "engaging in review of a qualified immunity judgment should . . . use its 'full knowledge of its own [and other relevant] precedents.'" *Elder v. Holloway*, 510 U.S. 510, 516 (1994). When this Court applies its "full knowledge" of the relevant law and properly construes the facts and all reasonable inferences in the light most favorable to Appellees/Plaintiffs, it is clear that the Defendant Officers are not entitled to qualified immunity.

On Plaintiffs' facts, which this Court must accept as true in determining which facts are analogous to pre-existing law that would establish Miller's

35

constitutional right to be free from excessive force, the shooting was excessive and unreasonable. Nunez and Velasco did not see a knife or any weapon in Miller's hand at any time. The officers deactivated lights and sirens, they did not announce themselves as law enforcement officers, they did not issue a warning that they were going to shoot or say "drop it," they did not know if Miller was the actual suspect of the 911 call, they did not see Monk's face, and they did not have a description of any alleged weapon.

The Ninth Circuit has denied qualified immunity in cases where officers failed to identify themselves before using force. In *Bryan v. Las Vegas Metropolitan Police Dept.*, 349 Fed. Appx. 132 (2009), the court reversed a grant of qualified immunity when there was a factual dispute about whether an officer identified himself as police before ordering a person to drop his weapon and then shooting him. The Ninth Circuit held that if the officer failed to identify himself, the plaintiff would have had no duty to drop his gun at the command of what appeared to be an unidentified intruder. Here, Nunez and Velasco never identified themselves as law enforcement officers; they deactivated lights and siren; and even though a command of "show me your hands" was giving, Defendant officers did not give Miller time to comply and shot Miller in his back four (4) times.

"When an officer's use of force is based on a mistake of fact, we ask whether a reasonable officer would have or should have accurately perceived that

36

fact." *Estate of Strickland v. Nevada County*, 69 F.4th 614, 621 (9th Cir. 2023) (internal quotation omitted); Torres v. City of Madera, 648 F.3d 1119, 1127 (9th Cir. 2011) ("[W]hether the mistake was an honest one is not the concern, only whether it was a reasonable one."). Appellants/Defendants assert that it was reasonable for Nunez and Velasco to perceive Miller's striking motion as a stabbing motion because the radio broadcast stated that the suspect was assaulting a woman and was armed with a knife. However, the Defendant Officers testified that they never saw Monk's face until she was outside the vehicle. The District Court concluded, "a reasonable trier of fact, viewing the body worn cameras and video surveillance cameras of the incident, could, however, conclude that the Defendant Officer's mistake was not reasonable because neither officer reported seeing anything in Mr. Miller's hand."

In *Tennessee v. Garner*, 471 U.S. 1 (1985), the Supreme Court held that deadly force may not be used unless "the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Id.* at 3. This fundamental principle has been clearly established for four decades. The Ninth Circuit has repeatedly applied and refined this principle in cases involving officers who use deadly force without seeing a weapon. The most significant is *Curnow By and Through Curnow v. Ridgecrest Police*, 952 F.2d 321 (1991), where officers broke down a suspect's door believing

37

he had injured a woman inside. As they entered, the suspect was standing next to an assault weapon, and an officer outside shot him in the back. The Ninth Circuit held that "the police officers could not reasonably have believed the use of deadly force was lawful because (the victim) did not point the gun at the officers and apparently was not facing them when they shot him the first time,". These cases establish that it is unconstitutional to use deadly force against a suspect who, while potentially dangerous based on dispatch information or officer assumptions, is not confirmed to be armed and does not pose an imminent threat. The facts of this case are so egregious that they fall squarely within established Fourth Amendment prohibitions. Shooting a suspect in the back within eleven seconds of arrival, without visual confirmation of a weapon, without adequate warnings, without any description of the alleged knife, and without allowing an opportunity to surrender is precisely the type of conduct that the Fourth Amendment clearly prohibits.

In *Hayes v. County of San Diego*, 736 F.3d 1223 (9th Cir. 2013), the Ninth Circuit denied qualified immunity where officers used deadly force against a suspect they believed to be armed but never actually saw with a weapon. The *Hayes* court emphasized the importance of visual confirmation of an actual threat before using deadly force.

In *Figueroa v. Gates* (*Figueroa v. Gates*, 207 F.Supp.2d 1085 (2002))[3], a California district court denied qualified immunity to shooting officers, noting that

courts have repeatedly held that excessive force defendants are not entitled to qualified immunity in cases where decedents did not have weapons on their persons, brandish weapons, or threaten to use them—even if the officers believed the decedents were armed. Defendant Officers admitted in their depositions that they never saw a weapon in Miller's hands.

In *Espinosa v. City & Cnty. of San Francisco*, 598 F.3d 528, 533 (9th Cir. 2010), officers shot and killed an unarmed suspect who refused to show his hands. One officer testified that she shot because she saw the suspect move his right arm and believed he would shoot her. Another officer testified that he saw something black in the suspect's hands that looked like a gun. The court denied qualified immunity and found that a jury could determine that the use of deadly force was unreasonable. *Id*. at 538.

### 3. The Shooting was "Obviously" Excessive.

In *Adams v. Speers*, 473 F.3d 989, 994 (9th Cir. 2007), the Ninth Circuit denied qualified immunity where the suspect's non-dangerousness and the officer's failure to warn before shooting placed the case squarely "within the obvious." *Id*. at 994. In *Brosseau v. Haugen*, 543 U.S. 194, 197-99 (2004), the Supreme Court reaffirmed the rule of *Garner* and explained that it provides sufficient "fair warning" of a constitutional violation in "obvious" cases. *Id*. at 197-99. Had the district court properly viewed these facts in the light most favorable to Plaintiffs

39

and taken all reasonable inferences therefrom, then the district court would have found that this case falls within the "obvious" as being a constitutional violation. *See, e.g.*, *Estate of Najera Aguirre v. Cnty. of Riverside*, 29 F.4th 624, 629 (9th Cir. 2022) ("no 'body of relevant case law' is necessary in an 'obvious case' like this one") (citing *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021); *see Hernandez v. City of Huntington Beach*, 798 Fed. Appx. 85, 88 (9th Cir. 2019) (Schroeder, dissenting) ("The pertinent facts are clear. There was no deadly weapon. Schiltz was armed at most with a pointed stick. . . . His conduct did not rise to the level of an immediate threat. The officers . . . should not be granted immunity on the theory that we do not yet have a decision saying the obvious."); *Harris*, 126 F.3d at 1204 ("a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question.") (quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997)); *K.H. Through Murphy v. Morgan*, 914 F.2d 846 (7th Cir. 1990) ("The easiest cases don't even arise.").

As this Court recently explained, "in an 'obvious case,' the standards set forth in *Graham* and *Garner*, though 'cast at a high level of generality,' can 'clearly establish' that a constitutional violation has occurred 'even without a body of relevant case law.'" *Najera Aguirre*, 29 F.4th at 629 (quoting *Rivas-Villegas*, 595 U.S. at 6 and *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004); *Taylor v. Riojas*, 592 U.S. 7, 8-9 (2020) (reaffirming *Hope v. Pelzer*, 536 U.S. 730, 739-41, (2002)).

Police officers have long been on notice that they cannot justify using deadly force where the suspect poses no immediate threat of death or serious bodily injury to the officer or others. *Garner*, 471 U.S. at 11.

### 4. The District Court Failed to Consider the Officers' Violations of Training

It is well established that a police officer's violation of police training weighs against granting qualified immunity. *See Drummond*, 343 F.3d at 1062 ("training materials are relevant not only to whether the force employed in this case was objectively unreasonable . . . but also to whether reasonable officers would have been on *notice* that the force employed was objectively unreasonable"). An officer who makes a conscious decision to violate basic training guidelines, designed to safeguard the subject, should not be heard subsequently to claim to have made a reasonable mistake or to have reasonably believed his or her decision to be lawful. *See Id*. The LAPD's own Use of Force Policy requires officers to "consider what other tactics if any were available" before using deadly force. The policy emphasizes de-escalation, proportionality, and the necessity of feasible warnings before using deadly force. Here, the officers failed to follow their own department's policies by immediately escalating to deadly force without attempting de-escalation or less intrusive alternatives.

41

### E.  APPELLANTS' CITED CASES ARE INAPPLICABLE

Appellants cite *Kisela v. Hughes*, 138 S. Ct. 1148 (2018), to argue that qualified immunity applies. However, *Kisela* and similar cases are factually distinguishable from this case in critical respects that placed the officers on notice that their conduct was unlawful. In *Kisela*, the Supreme Court granted qualified immunity where: (1) the suspect "was armed with a large knife"; (2) had advanced "within striking distance" of another individual; and (3) was ignoring the officer's orders to drop the knife. *Kisela*, 138 S. Ct. at 1154. None of these critical facts are present here. The officers in this case never saw a knife in Miller's hands, Miller never advanced toward any officer, and Miller was given no meaningful opportunity to comply with commands before being shot. Further, the Supreme Court reversed the Ninth Circuit's decision in *Kisela* only on the grounds that the 2011 case *Glenn v. Washington Cnty*, *supra*, could not have provided fair notice to the officers at the time of the 2010 incident in *Hughes*.  *Kisela v. Hughes*, 584 U.S. 100, 108 (2018).

Similarly, other cases cited by Appellants typically involve suspects who were visibly armed, advancing on officers, or otherwise posed a more direct and unambiguous threat. Those cases do not establish that it was reasonable for officers to shoot a suspect in the back within eleven seconds of arrival when the officers never saw a weapon, never gave adequate warnings, and never allowed the suspect

42

an opportunity to surrender.

## VIII. <u>CONCLUSION</u>

For the foregoing reasons, the District Court correctly determined that genuine disputes of material fact preclude a grant of qualified immunity at the summary judgment stage. The District Court properly applied the qualified immunity standard, viewed the evidence in the light most favorable to Plaintiffs, and correctly concluded that Officers Nunez and Velasco are not entitled to qualified immunity on the Fourth Amendment excessive force claim. This Court should affirm the District Court's Order of April 29, 2025, denying qualified immunity to Officers Nunez and Velasco and remand the case to the District Court for trial on all remaining claims.

Dated: February 2, 2026       **IVIE McNEILL WYATT PURCELL & DIGGS**

           By:    */s/ Rodney S. Diggs*
                 **RODNEY S. DIGGS, ESQ.**
                 Attorneys for Plaintiffs-Appellees,
                 Nicole Cavicante, Jeremy Cavicante, and
                 Randy L. Miller.

## CERTIFICATE OF COMPLIANCE PURSUANT TO FED. R. APP.

## 32(A)(7)(C) AND CIRCUIT RULE 32-1

Pursuant to the Federal Rule of Appellate Procedure 32 (a)(7)(C) and Ninth Circuit Rule 32-1, I certify that Appellees' Brief is proportionately spaced, has a typeface of 14 points or more and contains (8,871) word.

Dated: February 2, 2026   **IVIE McNEILL WYATT PURCELL & DIGGS**

        By: */s/ Rodney S. Diggs*
           **RODNEY S. DIGGS, ESQ.**
           Attorneys for Plaintiffs-Appellees,
           Nicole Cavicante, Jeremy Cavicante, and
           Randy L. Miller.

44

45

# STATEMENT OF RELATED CASES UNDER

# NINTH CIRCUIT RULE 28-2.6

Plaintiffs-Appellees are not aware of any related case currently pending in the Ninth Circuit Court of Appeals.

Dated: February 2, 2026       **IVIE McNEILL WYATT PURCELL & DIGGS**

              By:   ***/s/ Rodney S. Diggs***

                     **RODNEY S. DIGGS, ESQ.**
Attorneys for Plaintiffs-Appellees, Nicole Cavicante, Jeremy Cavicante, and Randy L. Miller.