No. 25-2911
# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

NICOLE CAVICANTE, individually and as Successor in Interest to RANDY MILLER, deceased, and JEREMY CAVICANTE, individually and as Successor in Interest to RANDY MILLER, deceased,

Plaintiff-Appellee

v.

CITY OF LOS ANGELES, OFFICER DANIEL NUNEZ, an individual; OFFICER ANTONIO VALASCO, an individual; and DOES 1 through 10, inclusive

Defendant-Appellant.

---

Appeal from the United States District Court
Case No. 2:21-cv-06676-KS
Hon. Karen L. Stevenson

---

## APPELLANT'S REPLY BRIEF

---

HYDEE FELDSTEIN SOTO, City Attorney (SBN 106866)
DENISE C. MILLS, Chief Deputy City Attorney (SBN 191992)
KATHLEEN A. KENEALY, Chief Assistant City Attorney (SBN 212289)
SHAUN DABBY JACOBS, Supervising. Assistant City Attorney (SBN 185073)
KYLE M. ELLIS, Deputy City Attorney (SBN 306364)
200 North Spring Street, 14th Floor, City Hall
Los Angeles, California 90012-4130
Phone: (213) 978-8102 | Email: kyle.ellis@lacity.org

Attorneys for Defendant and Appellant
City of Los Angeles, Officer Daniel Nunez, Officer Antonio Velasco et al.

**TABLE OF CONTENTS**

I.  Introduction........................................................................................6

II.  Argument............................................................................................7

    A.  Appellees Rely on Information Not Available to the Officers and Ignore Undisputed Available Information ................................................................8

      1.  Assuming All Reasonable Inferences in Appellees' Favor, the Officers Would Have Identified Mr. Miller as the Suspect from the Radio Dispatch ..............................................................................................................8

      2.  Appellees Cannot Rely on Hindsight to Cast Doubt on Officers' Reliance on the Radio Dispatch ...............................................................13

      3.  Whether Mr. Miller was Actually Armed is Not Material Because the Officers Reasonably Believed that Mr. Miller Was Armed Based on the Radio Dispatch and His Arm Movements ....................................................14

    B.  The Officers Used Reasonable Force Under The First Prong........................16

      1.  It is Undisputed that Assault with a Knife is a Severe Crime and that the Officers Were Responding to an Assault with a Knife................................16

      2.  The Officers Reasonably Reacted to an Immediate Threat to Ms. Monks.18

        i.  The Officers Did Not Need to Visually Identify the Weapon to Reasonably Believe that Mr. Miller Posed a Deadly Threat to Ms. Monks........................................................................................................19

        ii.  Officer Velasco Shouted "He's stabbing her!" Based on the Information he had and Officer Nunez Reasonably Relied on the Exclamation to use Deadly Force .................................................................................................21

        iii.  The Immediacy of the Threat to Ms. Monks Made it Infeasible for the Officers to Announce Themselves or Use Alternative Tactics .............22

        iv.  Appellees' Do Not Cite Any Evidence in the Record to Support Their Argument that the Officers Failed to Comply with LAPD Training.....25

      3.  Mr. Miller Was Not Resisting Arrest but Posed an Immediate Threat to Ms. Monks...........................................................................................26

        i.  Split Second Decision-making................................................................27

    C.  Excessive Force is not Clearly Established Under the Second Prong ..........28

1.  Excessive Force is Not Clearly Established in the Facts in this Case ........29

2.  Deadly Force was not "Obviously" Excessive in this Case........................33

III.  Conclusion .........................................................................................................33

# TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*Argueta v. Jaradi,*
  86 F.4th 1084 (5th Cir. 2023)...............................................................................15
*Ashcroft v. al-Kidd,*
  563 U.S. 731 (2011) ...........................................................................................18
*Barnes v. Felix,*
  605 U.S. 73 (2025) .............................................................................................16
*Bryan v. Las Vegas Metropolitan Police Department,*
  349 F.App'x 132 (9th Cir. 2009) ........................................................................30
*County of Humboldt v. Headwaters Forest Defense,*
  534 U.S. 801 (2001) ...........................................................................................23
*Cruz v. City of Anaheim,*
  765 F.3d 1076 (9th Cir. 2014)...................................................................... 21, 22
*Curnow By & Through Curnow v. Ridgecrest Police,*
  952 F.2d 321 (9th Cir. 1991)........................................................................ 30, 31
*Deorle v. Rutherford,*
  272 F.3d 1272 (9th Cir. 2001)............................................................................23
*District of Columbia v. Wesby,*
  583 U.S. 48 (2018) ...................................................................................... 16, 28
*Drummond ex rel. Drummond v. City of Anaheim,*
  343 F.3d 1052 (9th Cir. 2003)............................................................................25
*Espinosa v. City & County of San Francisco,*
  598 F.3d 528 (9th Cir. 2010)..............................................................................32
*Estate of Larsen v. Murr,*
  511 F.3d 1255 (10th Cir. 2008)................................................................... 14, 15
*Estate of Lopez by & through Lopez v. Gelhaus,*
  871 F.3d 998 (9th Cir. 2017)..............................................................................31
*Ewing v. City of Stockton,*
  588 F.3d 1218 (9th Cir. 2009).............................................................................20
*Figueroa v. Gates,*
  207 F.Supp.2d 1085 (C.D. Cal. 2002)......................................................... 31, 32
*Foster v. City of Indio,*
  908 F.3d 1204 (9th Cir. 2018)..................................................................... 12, 15
*George v. Morris,*
  736 F.3d 829 (9th Cir. 2013)....................................................................... 21, 22
*Glenn v. Washington County,*
  673 F.3d 864 (9th Cir. 2011)..............................................................................17

*Graham v. Connor,*
490 U.S. 386 (1989) ...................................................................... 7, 13, 27
*Hayes v. County of San Diego,*
736 F.3d 1223 (9th Cir. 2013)....................................................................24
*Headwaters Forest Defense v. County of Humboldt,*
240 F.3d 1185 (9th Cir. 2000)....................................................................23
*Headwaters Forest Defense v. County of Humboldt,*
276 F.3d 1125 (9th Cir. 2002).............................................................. 23, 24
*Hurtado v. State of California,*
2023 WL 4054530 (E.D. Cal. June 15, 2023, No. 2:19-CV-02343-DAD-AC) ..31
*Kisela v. Hughes,*
584 U.S. 100 (2018) .......................................................................... 29, 33
*McLenagan v. Karnes,*
27 F.3d 1002 (4th Cir. 1994)................................................................ 15, 21
*Nelson v. City of Davis,*
685 F.3d 867 (9th Cir. 2012)....................................................................23
*Plumhoff v. Rickard,*
572 U.S. 765 (2014) ...............................................................................26
*S.R. Nehad v. Browder,*
929 F.3d 1125 (9th Cir. 2019)............................................................... 18, 24
*Sabbe v. Washington County Board of Commissioners,*
84 F.4th 807 (9th Cir. 2023)....................................................................28
*Saucier v. Katz,*
533 U.S. 194 (2001) ...............................................................................23
*Scott v. Henrich,*
39 F.3d 912 (9th Cir. 1994)......................................................................20
*Singh v. City of Phoenix,*
124 F.4th 746 (9th Cir. 2024)............................................................... 17, 18
*Ventura v. Rutledge,*
978 F.3d 1088 (9th Cir. 2020)....................................................................33
*Waid v. County Of Lyon,*
87 F.4th 383 (9th Cir. 2023)................................................... 7, 15, 29, 33
*Webster v. Fall,*
266 U.S. 507 (1925) ...............................................................................31
*White v. Pauly,*
580 U.S. 73 (2017) ...............................................................................28

# I.  INTRODUCTION

Defendants and Appellants Los Angeles Police Department Officers Antonio Velasco and Daniel Nunez are entitled to qualified immunity. A reasonable officer in the circumstances confronting Officers Velasco and Nunez would have perceived Decedent Randy Miller's ongoing attack on Patricia Monks sufficient to justify the use of deadly force when (1) the radio dispatch told them the suspect was assaulting his victim with a knife, (2) they personally observed Mr. Miller pinning Ms. Monks in the cab of a car, (3) they personally observed Mr. Miller attacking Ms. Monks with "hammer punch" motions consistent with stabbing Ms. Monks, and (4) in the case of Officer Nunez, was told by his fellow officer that Mr. Miller was "stabbing her!" before using deadly force. And even if the use of deadly force was constitutionally excessive, no analogous case existed in January 2021 that clearly established deadly force was unlawful.

Appellees failed to properly analyze qualified immunity by failing to apply the reasonable officer standard. They erroneously rely on evidence that was not available to the officers during the incident, and incorrectly argue that the mere existence a factual dispute completely bars the application of qualified immunity. The cases Appellees rely on differ significantly from the circumstances Officers Velasco and Nunez faced, and do not help to delimit the range of constitutionally

appropriate force available to an objectively reasonable officer under the circumstances of this case.

Appellees also fail to provide any case clearly establishing a constitutional violation. Appellees argue that the violation was "obvious," but did not meet their burden of providing a case showing a violation under similar circumstances. Their argument that they need not provide an analogous case is out of step with this Court's admonition not to cast cases "at a high level of generality." *Waid v. County Of Lyon*, 87 F.4th 383, 387-88 (9th Cir. 2023). None of the cases Appellees cite prohibit the use of deadly force when officers reasonably believe that a suspect is stabbing a trapped victim.

## II. ARGUMENT

While the parties generally agree on the standard of review, Appellees incorrectly apply the reasonable officer standard throughout their argument. As the Supreme Court stated in *Graham*, the Court must review the actions from "the perspective of a reasonable officer on the scene" and in light of the "totality of the circumstances." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). Appellees instead advance an erroneous standard focused on what the officers *did not* perceive and *did not* do, rather than looking at the circumstances that *did* exist and what a reasonable officers *may* do under those circumstances. Appellees' Answering Brief at 26 (hereinafter "AB"). By using this approach, Appellees rely

on evidence and information that is only available in hindsight, fail to address the legal authority that Appellants provided in their Opening Brief, and ultimately mis-apply the reasonable officer standard throughout their analysis.

### A. APPELLEES RELY ON INFORMATION NOT AVAILABLE TO THE OFFICERS AND IGNORE UNDISPUTED AVAILABLE INFORMATION

Appellees argue that the Officers failed to "properly confirm" that Mr. Miller and Ms. Monks were the subject of the radio dispatch such that it was unreasonable to approach Miller and Monks "with a mindset that the male inside the Impala was the subject of the radio call and was armed." AB at 12-13. They base their argument on three pieces of evidence. First, the 911 caller mis-described the color of Mr. Miller's pants. Second, the Officers could not immediately identify the gender or race of Mr. Miller and Ms. Monks. Third, Mr. Miller was not wearing a hat. AB at 11-13. In advancing these arguments, Appellees attempt to craft a favorable narrative by ignoring undisputed relevant evidence and incorporating irrelevant evidence.

### 1. Assuming All Reasonable Inferences in Appellees' Favor, the Officers Would Have Identified Mr. Miller as the Suspect from the Radio Dispatch

On Appellees' first point regarding the discrepancies between the information in the radio call and what the officers observed at the scene, it is not disputed that Mr. Brown described Mr. Miller's pants as "black" instead of "blue" in his 911 call, or that Mr. Miller's pants were observably blue. 2-ER-0091 (Fact

8

No. 14); Nunez 22:29:43. Nor is it disputed that dispatch advised the Officers' that the suspect wore "black jeans." 2-ER-0118 (Fact No. 12); Nunez 22:29:25-22:29:27. But Appellees cannot explain why a minor discrepancy between the color of Mr. Miller's pants (blue versus black) would cause an objectively reasonable officer to conclude that Mr. Miller was *not* the knife wielding suspect from the radio dispatch. As more fully discussed below, the full scope of the circumstances would compel any reasonable officer in the Officers' position to conclude that Mr. Miller *was* the subject of the radio dispatch.

On Appellees' second point, their evidence does not support the broad assertion that "[t]he Defendant Officers did not know the race or gender of the individuals inside the Impala until after Miller and Monk were outside the vehicle." AB at 12. Appellees erroneously cite to four pieces of evidence, only one of which helps them. (1) 2-ER-0090 (Fact No. 5), does not support this proposition, as it merely recites the content of the radio call; (2) 2-ER-0175-0179, the videos lodged with the court, do not support the assertion that the Officers *did not or could not* perceive the race or gender of the suspect and victim; (3) 2-ER-0208 at 13:22-25, Officer Velasco testifies that he did not "see the female's face" and did not "see the male's face" upon approaching the car, but earlier on the same page testified that "Based on the size of the feet and the -- the legs, you can -- I was able to make out the one on top was male and on the bottom was the female,

9

just based on the size -- the size, the length," and testified later that "[w]ithout assuming her gender, yes, I -- I could make out that she was female." 2-ER-208 at 13:16-21; 2-ER-0214 at 29:1-10. And (4) 2-ER-0214, Officer Velasco testifies that he could not determine the race of the suspect and victim "initially", and only "confirm[ed] the race of the individuals" after they were removed from the car. Only the last piece of evidence supports a portion of their assertion, and only as to Officer Velasco.

Appellees ignore the testimony of Officer Nunez, who testified that he *did* visually identify the race and genders of the suspect and victim when he arrived at the scene, stating that "[w]e exit our vehicles -- or we exit our vehicle and we observed a male black on top of a female black. I looked inside. I turned on my flashlight to see, and my partner starts saying that he was -- he observed the female -- or the male to be stabbing the female." 2-ER-0186 at 5:22-24. For purposes of summary judgment, the evidence supports the inferences that Officer Nunez identified the race and genders of the suspect and victim, and that Officer Velasco identified their genders but not their race. Given this perception, a reasonable officer in either Officer Velasco or Officer Nunez's position would reasonably conclude that Mr. Miller was the suspect from the radio dispatch.

On Appellees' third point, it is undisputed that the radio dispatch included information that Miller was wearing a "dark baseball cap." 2-ER-0090 (Fact

10

No. 5); Nunez 22:28:33-22:28:49. However, whether Miller wore a hat when the officers arrived was not a material fact under the circumstances. A hat is easily knocked off in a fight, and especially under the circumstances where Mr. Miller pinned Ms. Monks in the enclosed space of the cab of a car. Thus, it would not be a reasonable inference that the lack of a hat would cause a reasonable officer to doubt Mr. Miller's identity as the suspect from the radio dispatch.

Additionally, Appellees fail to discuss any of the undisputed facts that support the Officers' conclusion that Mr. Miller was the suspect from the radio dispatch. First, Appellees ignore the undisputed fact that the radio dispatch included information that the suspect was wearing a black jacket. 2-ER-0090 (Fact No. 5); Nunez 22:28:33-22:28:49. Mr. Miller was, in fact, wearing a black jacket. As the Bodyworn videos clearly show, the Officers approached Mr. Miller from behind, and plainly saw Mr. Miller's black jacket. Velasco 22:29:26-22:31:35; Nunez 22:28:14-22:31:35.

Second, Appellees do not address the undisputed fact that, on arrival, Officers Velasco and Nunez immediately observed Mr. Miller attacking Ms. Monks. Velasco 22:29:26-22:31:35; Nunez 22:28:14-22:31:35. The car door was open, Mr. Miller made "hammer punch" motions consistent with stabbing someone with a knife, and the officers saw that Mr. Miller had a victim trapped in the car because Ms. Monks' feet were sticking outside of the cab of the vehicle. *See*

11

Appellant's Opening Brief at 13-14 (hereinafter "OB"); Velasco 22:29:31-22:29:48; Nunez 22:29:30-22:29:48. No reasonable officer approaching this intersection would conclude that the Mr. Miller was not the suspect from the radio dispatch when the Officers immediately perceived Mr. Miller's ongoing attack on a trapped victim.

Finally, Appellees ignore the undisputed video evidence that, except for Mr. Miller and Ms. Monks, no other people were at the intersection. Velasco 22:29:35-22:30:16; Nunez 22:29:35-22:30:16; Security 01:29:28-01:29:57.

In addition to the facts themselves leading to the only rational conclusion that Mr. Miller was the suspect from the radio dispatch, this Court's holding in *Foster v. City of Indio*, 908 F.3d 1204 (9th Cir. 2018),[1] further supports the Officers' reliance on the radio dispatch in assessing whether Mr. Miller was armed with a knife. As explained in the Opening Brief, *Foster* holds that a reasonable officer may rely on the information reported to 911 when assessing whether a threat exists, and the nature of that threat. OB at 9, 16, 21, 22, 25; *Foster, supra,* 908 F.3d at 1214 ("911 calls are more credible 'because the police must take 911 emergency calls seriously and respond with dispatch,' when compared to non-emergency tips concerning 'general criminality.' "). The Officers located Mr. Miller at the intersection provided in the radio dispatch, Mr. Miller wore a black

---

[1] Appellees do not discuss or cite *Foster* in their Answering Brief.

jacket as described in the radio dispatch, Mr. Miller and Ms. Monks were the only people at the intersection, and Mr. Miller was actively attacking a trapped victim when the Officers arrived on the scene. Given these circumstances, the Officers reasonably relied on the radio dispatch to assess that Mr. Miller was armed with a knife, even when they did not personally observe the weapon, because he behaved in a manner consistent with someone stabbing a victim with a knife.

### 2. Appellees Cannot Rely on Hindsight to Cast Doubt on Officers' Reliance on the Radio Dispatch

Appellees rely on information that was unavailable to the Officers during the incident to attempt to cast doubt on the reasonableness of the Officer's reliance on the radio dispatch. Specifically, Appellees provide two types of hindsight evidence: (1) no one treated Ms. Monks for any knife wounds, and (2) the autopsy report showing Mr. Miller received a cut on his face. AB at 14-15.

The Officers did not know whether Ms. Monks would require medical treatment or whether Mr. Miller had a cut on his face *during* the incident, at the time they decided to use deadly force. As *Graham* instructs, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, *supra*, 490 U.S. at 396. Accordingly, the information about Ms. Monks and Mr. Miller gathered after the incident is not relevant to the issue of whether the Officers acted reasonably during the incident itself.

*3. Whether Mr. Miller was Actually Armed is Not Material Because the Officers Reasonably Believed that Mr. Miller Was Armed Based on the Radio Dispatch and His Arm Movements*

Appellees characterize Mr. Miller as "unarmed" when the Officers shot him, simply because the Officers could not see his hands. AB at 11. But even assuming Mr. Miller was, in fact, unarmed (which the City disputes), it is irrelevant to determine whether the use of deadly force was reasonable in this case. Neither officer could see Mr. Miller's hands, and thus could not directly observe whether Mr. Miller held a knife or was unarmed. 1-ER-0020 at 16:13-14; 2-ER-0190-0191 (In response to the question "What about [Mr. Miller's] left hand? Could you see that?" Officer Nunez answered "No."); 2-ER-0209 at 14:18-19 (Velasco testified that "I couldn't make out if he was holding anything"). Appellees do not dispute that the Officers saw Mr. Miller make "hammer punch" motions with his arms and consistent with someone wielding a knife. AB at 29-30. And as explained in the Opening Brief, the Officers do not need to wait until they see the "glint of steel" to take action to prevent Ms. Monks from suffering great bodily injury or death at Mr. Miller's hands. OB at 25-26; *see also Estate of Larsen v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008) ("A reasonable officer need not await the 'glint of steel' before taking self-protective action; by then, it is 'often ... too late to take safety precautions.' ").

14

Here, because no factual dispute exists that the Officers *could not* perceive Mr. Miller's hands, the circumstances that the Court must analyze are whether deadly force is a reasonable response when an officer *cannot see* a knife but was informed that the suspect had a knife from the radio dispatch and sees activity consistent with a knife attack. 1-ER-0020 at 16:13-14; 2-ER-0190-0191; 2-ER-0209 at 14:18-19. The Court cannot examine the Officers' inability to perceive the weapon in a vacuum, and as in *Foster*, the Officers reasonably believed that Mr. Miller was armed with a knife based on the totality of the circumstances, and used that reasonable belief to inform their actions. *Foster, supra*, 908 F.3d at p. 1214.

Appellees do not cite a single case that stands for the proposition that the Officers' inability to personally, visually, observe Mr. Miller wielding a knife means that the use of deadly force was unreasonable as a matter of law, nor do Appellees address the cases the Officers discussed in their Opening Brief, which hold that an officer does not need to visually identify a weapon before using force – even deadly force – if the force is within the range of reasonable conduct. AB at 28 & 31; OB at 25-26 (Appellants cited to *Waid, supra,* 87 F.4th at p. 389; *Argueta v. Jaradi*, 86 F.4th 1084, 1093 (5th Cir. 2023); *Estate of Larsen, supra*, 511 F.3d at p. 1260; and *McLenagan v. Karnes*, 27 F.3d 1002, 1007-08 (4th Cir. 1994)).

### B. The Officers Used Reasonable Force Under The First Prong

Appellees' analysis of the first prong of qualified immunity fails to apply the reasonable officer standard *Graham* requires and conflates "subjective belief" with objective, but circumstantial, evidence. AB at 30. The first prong requires that the court look at the totality of the circumstances because the "in-the-moment facts cannot be hermetically sealed off from the context in which they arose." *Barnes v. Felix*, 605 U.S. 73, 80 (2025) (internal quotation omitted). And because "[a] factor viewed in isolation is often more 'readily susceptible to an innocent explanation' than one viewed as part of a totality." *District of Columbia v. Wesby*, 583 U.S. 48, 62 (2018). Appellees invite the Court to disregard relevant circumstantial evidence – specifically, the radio dispatch and the Officers' observation of Mr. Miller making stabbing motions – by recasting that objective, if circumstantial, evidence as "subjective belief." This Court should not accept Appellees' invitation.

#### 1. It is Undisputed that Assault with a Knife is a Severe Crime and that the Officers Were Responding to an Assault with a Knife

The crime here was an assault with a knife, with the radio broadcast informing the Officers that the suspect was intoxicated or drunk, "…armed with a knife. Previously assaulted the P[erson ]R[eporting] and is now attempting to assault a female next to the grocery store." 2-ER-0090 (Fact No. 5); 2-ER-0114-0115 (Fact No. 6); 3-ER-0582; 3-ER-0587; Nunez 22:28:33-22:28:49. The district court correctly held that "the reported crime of assault in this case was severe, and

16

given that severity, this factor weighs clearly in Defendants' favor." 1-ER-0020 at 16:27-28. Appellees do not seriously dispute this conclusion. AB at 26-28.

Sidestepping the severity of the crime, Appellees reiterate their arguments about identification of Mr. Miller, and otherwise rely on *Singh* to advance the uncontroversial position that officers should re-assess the circumstances on arrival at the scene. AB at 26-28; *Singh v. City of Phoenix*, 124 F.4th 746 (9th Cir. 2024). The facts of *Singh* are distinguishable. In *Singh* officers responded to an attempted robbery with a knife call, and when they arrived, the suspect was nowhere near any victim, held a knife *to his own neck* and asked the officers to kill him. *Id.* at 748. The *Singh* court reasoned that qualified immunity was not appropriate because a jury could reasonably conclude that shooting the suspect was constitutionally excessive when he held a knife to his own neck, never threatened anyone else during the two minutes between the arrival of the officers and the shooting, and told the officer multiple times that he wanted to be shot. *Idem*. The *Singh* court also noted how the standard was clearly established by the 2011 *Glenn* case, which featured circumstances that were "closely akin" to those in *Singh* – including a suicidal suspect who held a knife to his own neck, and who did not pose a direct danger to anyone in the four minutes between the arrival of the officers and the shooting. *Singh, supra*, 124 F.4th at pp. 750–51, discussing *Glenn v. Washington County*, 673 F.3d 864 (9th Cir. 2011). Additionally, since the Court decided *Singh*

17

in 2024, the case could not put the Officers on notice of what was clearly established law in 2021, when the incident in this case occurred. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (Noting a plaintiff must show "that the right was 'clearly established' *at the time of the challenged conduct*.") (emphasis added).

As discussed *ante*, the Officers reasonably believed that Mr. Miller was the suspect of the radio dispatch and was armed with a knife. On arrival at the intersection, the Officers observed Mr. Miller pinning Ms. Monks in the cab of a car, and saw him making motions consistent with stabbing. Nothing about the Officers' observations on arrival caused them to believe "the suspect is 'indisputably not engaged in felonious conduct when the officer arrives.' " *Singh, supra*, 124 F.4th at 752, quoting *S.R. Nehad v. Browder*, 929 F.3d 1125, 1136 (9th Cir. 2019). Rather, the Officers directly observed Mr. Miller's continued assault on Ms. Monks. Their observations, and the video evidence, directly contradict Appellees' factually unsupported characterization that the officers "did not observe any felonious conduct themselves." AB at 27.

2.  *The Officers Reasonably Reacted to an Immediate Threat to Ms. Monks*

The following facts are undisputed. The Officers did not see Mr. Miller's hands, and did not directly observe whether he was armed with a knife. AB at 28. Officer Velasco believed that Mr. Miller was stabbing Ms. Monks based on the radio dispatch, and personally observing Mr. Miller making "stabbing motions"

18

AB at 29. Approximately 11 seconds passed between the Officers' arrival and the use of deadly force. AB at 30. And the Officers did not issue a warning about the use of deadly force or identify themselves as police before using deadly force. AB at 30-31.

While Appellees assert that the facts show that Mr. Miller "posed no immediate threat to the officers or to Monk at the moment the officers fired their weapons," the video evidence and cases do not support this conclusion. AB at 28. Rather, the undisputed evidence shows that Officers Velasco and Nunez reasonably believed that Mr. Miller was armed with a knife, Mr. Miller was attacking Ms. Monk with that knife, and deadly force was necessary to protect Ms. Monks from grave bodily injury. OB at 13-14.

i. The Officers Did Not Need to Visually Identify the Weapon to Reasonably Believe that Mr. Miller Posed a Deadly Threat to Ms. Monks

Appellees argue, without authority, that no immediate threat existed because neither Officer personally, visually, identified a knife in Mr. Miller's hand before using deadly force. AB at 28 & 30. And Appellees do not discuss, distinguish, or cite to the cases Appellants provided in the Opening Brief. OB at 25-26. Appellees argue, again without authority, that the objective, circumstantial, evidence that the Officers had – hearing the radio dispatch and seeing the stabbing motions – is instead "subjective belief" that cannot support deadly force in stopping Mr. Miller's ongoing attack on Ms. Monks. AB at 28 & 30. This Court has held that

19

circumstantial evidence *can* support qualified immunity. *See*, *e.g.*, *Ewing v. City of Stockton*, 588 F.3d 1218, 1231 (9th Cir. 2009) (Qualified immunity appropriate on false arrest claim when officers relied on circumstantial evidence, including the presence of the same instruments used in a murder, a "Mag-lite, knives and Jus' Brothers paraphernalia found in the [plaintiff's] home," as a basis for the arrest.). Appellees also argue the 'hammer punch motion' is "equally consistent" as between stabbing and punching. AB at 29-30. Appellants agree that the motion is consistent with both stabbing and punching.

As already briefed by Appellants in the Opening Brief, and discussed *ante*, the question directly posed to this Court is whether the Officers' use of deadly force was within the range of reasonable conduct when they reasonably believed Mr. Miller was stabbing a trapped victim, even when they could not see a knife in Mr. Miller's hands. OB at 25-26; *see Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994) ("Requiring officers to find and choose the least intrusive alternative would require them to exercise superhuman judgment… Officers thus need not avail themselves of the least intrusive means of responding to an exigent situation; they need only act within that range of conduct we identify as reasonable"). Under the standards of the cases discussed in the Opening Brief, the use of deadly force was reasonable here when the Officers reasonably believed it was necessary to protect Ms. Monks from being stabbed. OB at 25-26.

ii. Officer Velasco Shouted "He's stabbing her!" Based on the Information he had and Officer Nunez Reasonably Relied on the Exclamation to use Deadly Force

Appellees assert that Officer Velasco's exclamation that "He's stabbing her!" does not "constitute visual confirmation of an actual weapon or an actual stabbing" to erroneously argue that the statement is irrelevant. AB at 29. The exclamation is highly relevant to Officer Nunez's use of deadly force and Officer Velasco's perception of the circumstances. OB at 31-35. As discussed in the Opening Brief, the *McLenagan* case shows how an exclamation like "He's stabbing her!" is highly relevant to an officer in assessing whether an imminent threat exists, even if they do not personally observe a weapon before using deadly force. Tellingly, Appellees ignore *McLenagan* in the Answering Brief and provide no law that serves to contradict the reasoning or holding in *McLenagan*.

Appellees instead cite to the *George* and *Cruz* cases, in support of the proposition that "events may be reconstructed circumstantially from competent expert and physical evidence, as well as inconsistencies in the testimony of law enforcement." AB at 29; *George v. Morris*, 736 F.3d 829 (9th Cir. 2013); *Cruz v. City of Anaheim*, 765 F.3d 1076 (9th Cir. 2014). Both of these cases are factually distinguishable from the circumstances in this case. In *George*, the court determined that officers were not entitled to qualified immunity when there was evidence presented that they shot the "sixty-four-year-old decedent without objective provocation while he used his walker, with his gun trained on the

21

ground." *George, supra*, 736 F.3d at 839. *Cruz* similarly held that qualified immunity was not appropriate when there was circumstantial evidence that a jury could use to determine that the officers acted unreasonably when they shot Cruz, and the only countervailing evidence in favor of the officers was their own testimony. *Cruz, supra*, 765 F.3d at 1079.

Neither of these cases apply to the circumstances here, where there are three videos available of the incident, all of which align with the Officers' testimony. Appellees offer no inconsistent Officer statements, no material disputes about the record for the purposes of summary judgment, and the record already contains ample non-testimonial evidence of the events in the form of the camera footage. If Appellees contend that Mr. Miller's possession of a knife is the sole relevant material issue, then they needed to address the countervailing evidence that shows that Mr. Miller *was* attacking Ms. Monks with a knife. Specifically, the knife LAPD recovered from the car, and Ms. Monks' testimony shortly after the incident describing Mr. Miller attacking her with a knife. 2-ER-0103 (Fact No. 60); 3-ER-0348-0351; 2-ER-0254-0257.

iii.  The Immediacy of the Threat to Ms. Monks Made it Infeasible for the Officers to Announce Themselves or Use Alternative Tactics

Appellees argue that Officers Velasco and Nunez's failure to issue warnings beyond "Let me see your hands," failure to issue direct commands like 'drop the knife,' failure to announce themselves as police officers, and failure to issue a

separate verbal warning before using deadly force is sufficient to show that the use of force in this case was excessive. AB at 30. Appellees rely on three factually distinguishable cases: *Headwaters Forest Defense*; *Nelson*; and *Deorle*. In *Headwaters Forest Defense*, officers pepper-sprayed non-violent protesters conducting a sit-in who refused to disperse and who failed to release "lock-down devices" on command of the officer. *Headwaters Forest Defense v. County of Humboldt*, 240 F.3d 1185, 1190-95 (9th Cir. 2000).[2] In *Nelson*, an officer shot a non-violent partygoer with a "pepperball projectile" without any warning when standing "in the breezeway of the apartment complex, attempting to leave the party and awaiting instruction from the officers." *Nelson v. City of Davis*, 685 F.3d 867, 872 (9th Cir. 2012). In *Deorle*, an officer shot an unarmed individual with a "beanbag round" without warning when he walked towards an officer, even though he "had not attacked or even touched anyone, had generally obeyed the instructions given him by various police officers, and had not committed any serious offense." *Deorle v. Rutherford*, 272 F.3d 1272, 1275 (9th Cir. 2001). In all three cases, the court held that the officers' failure to give a warning before using force did not

---

[2] The Supreme Court subsequently *vacated Headwaters Forest Defense* for reconsideration in light of *Saucier v. Katz*, 533 U.S. 194 (2001). *See County of Humboldt v. Headwaters Forest Defense*, 534 U.S. 801 (2001). On reconsideration, the Ninth Circuit upheld its original analysis even under the standards of *Saucier. See Headwaters Forest Defense v. County of Humboldt*, 276 F.3d 1125, 1129 (9th Cir. 2002).

entitle the officers to qualified immunity because the plaintiffs posed no danger to anyone, there was ample time to issue warnings, and the level of force used on non-violent, compliant, suspects was clearly excessive under established precedent.

None of the cases Appellees cite involve circumstances where officers had a reason to believe the suspect was armed, and none of the cases cited occurred when the officer saw the suspect attacking a victim. In each case, time was not of the essence, and none of the cases included circumstances where the officers tried to protect a third party – as occurred here. *See* 2-ER-0132 (Fact No. 35) (Undisputed that "Officer Nunez used deadly force against Decedent because he had observed Decedent make stabbing motions at Ms. Monks and relied on Officer Velasco's observations. Given the nature of the dispatch call, Officer Velasco believed Decedent to be armed with a knife"). The significant differences between the circumstances warranting a verbal warning before the officers used force in *Headwaters Forest Defense*, *Nelson*, and *Deorle*, versus the circumstances here show that the Officers could not feasibly issue those types of warnings before using deadly force because the Officers reasonably believed Ms. Monks' life was at risk or she would suffer great bodily injury from any delay. *See* OB at 36-43 (discussing *S.R. Nehad v. Browder*, 929 F.3d 1125 and *Hayes v. County of San Diego*, 736 F.3d 1223 (9th Cir. 2013), relied on by the district court, and are similarly distinguishable on the facts).

iv.  Appellees' Do Not Cite Any Evidence in the Record to Support Their Argument that the Officers Failed to Comply with LAPD Training

Appellees argue that the *Drummond* case stands for the proposition that "a police officer's violation of police training weighs against granting qualified immunity." AB at 41. The *Drummond* case involved officers handcuffing and pinning a person for over twenty minutes, who told them he couldn't breathe and subsequently fell into a permanent vegetative state. *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1055 (9th Cir. 2003). In *Drummond* there was evidence that the officer received express training and warnings about the dangers of this exact type restraint, and thus had "fair warning" that the force was constitutionally excessive. *Id.* at 1061.

Appellees do not cite to any evidence in the record to support their claim that the Officers violated "LAPD's own Use of Force Policy." AB at 41. To the extent there is anything in the record describing LAPD use of force policy, it is that officers are trained to "[u]se of deadly force to protect myself and others from… what I believe the imminent threat is death or serious bodily harm." 3-ER-0565 at 25:3-9. Appellees' expert agreed, stating that "[i]f a police officer sees somebody armed with a knife stabbing another individual, a police officer would be trained to use deadly force and not use a taser." 3-ER-0377 at 43:6-15; *see also* 3-ER-0371 at 35:21-24 ("generally speaking, yes, if -- if somebody is stabbing another person, an officer can use deadly force to protect the life of that other

25

person"). Since it is undisputed that officers may use deadly force to protect a third party if the officer reasonably believes a suspect is attacking a third party with a knife, the Officers complied with LAPD policy.

### 3. Mr. Miller Was Not Resisting Arrest but Posed an Immediate Threat to Ms. Monks

Appellees erroneously argue that since that Mr. Miller was "not actively resisting arrest or fleeing from the officers" the force was excessive. AB at 31-32. This factor is not relevant here because the Officers used force to protect a victim from immediate harm, not based on the suspect's actions evading or resisting arrest. Appellees provide no authority to support their argument that the Court must consider this factor in all in cases, regardless of the circumstances, including in cases where officers use force to protect a victim rather than to protect their own lives, the safety of the general public, or in cases where the suspect is threatening officers or a third party with great bodily harm or death.

Deadly force has been held to be constitutional under circumstances where a suspect is fleeing from police and only poses a *potential* danger to the public. *See, e.g.*, *Plumhoff v. Rickard*, 572 U.S. 765 (2014) (Officers did not violate the Fourth Amendment when firing 15 shots into a fleeing car after the motorist engaged officers in a dangerous high-speed pursuit when the officers reasonably believed the suspect posed a danger to the general public because of their driving). Here, Mr. Miller posed an *immediate threat* to Ms. Monks when the Officers reasonably

26

believed that Ms. Monks was being stabbed by Mr. Miller. It would be inconsistent with established law to hold that deadly force is appropriate when a suspect poses a *future* threat to the general public by fleeing in a dangerous manner, but not appropriate when an officer reasonably perceives that a suspect is an *immediate* threat to a trapped victim.

i. Split Second Decision-making

Appellees argue, without authority, that "the Ninth Circuit has made clear that this [split second decision] doctrine does not shield officers from liability when their own reckless actions create the very emergency, they claim necessitated the use of deadly force." AB at 32. And that the officers' "choice to approach silently with guns drawn and open fire within seconds" was the 'circumstance' that created the danger. AB at 33. But Mr. Miller created the dangerous situation by attacking Ms. Monks – the Officers simply responded to the threat Mr. Miller posed. 2-ER-0122-0123 (Fact No. 20) ("Undisputed that Miller and Monks were in a physical altercation").

Unlike Appellees, this Court should follow the admonition of the Supreme Court, which explained that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham,*

27

*supra,* 490 U.S. at 396-97. Moreover, the Ninth Circuit held in circumstances where "a suspect 'is armed—*or reasonably suspected of being armed,*' even 'a furtive movement' can 'create an immediate threat' sufficient to justify the use of deadly force." *Sabbe v. Washington County Board of Commissioners*, 84 F.4th 807, 828-29 (9th Cir. 2023) (emphasis added) (Officers' use of deadly force was reasonable when they received reports that the suspect was armed, observed the suspect behave in an erratic and hostile manner, and made a "furtive movement" the officers reasonably perceived to be the suspect aiming a gun at them). Established precedent shows that the Officers' use of deadly force was reasonable under the circumstances. Appellees offer no legal support for the opposite proposition.

## C.  EXCESSIVE FORCE IS NOT CLEARLY ESTABLISHED UNDER THE SECOND PRONG

The party asserting the injury bears the burden of showing that "at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Wesby, supra*, 583 U.S. at 63 (internal quotation marks omitted). In determining whether a violation is clearly established, the party opposing qualified immunity must "identify a case where an officer acting under similar circumstances… was held to have violated the Fourth Amendment." *White v. Pauly*, 580 U.S. 73, 79 (2017). Parties and the courts may not cast cases "at a high level of generality" except when the violation is "obvious"

28

but courts caution that "such obvious cases are 'rare' … [and] [p]laintiffs must either explain why their case is obvious under existing general principles or, more commonly, show specific cases that control or reflect a consensus of non-binding authorities in similar situations." *Waid, supra*, 87 F.4th at 387-88.

    1. *Excessive Force is Not Clearly Established in the Facts in this Case*

Appellees' Answering Brief does not meet their burden of demonstrating that the law was clearly established. AB at 34-43. Moreover, Appellees appear to agree with Appellants that one of the cases with the most closely analogous facts, *Kisela*, is "factually distinguishable from this case." AB at 42. Appellants agree that *Kisela* is factually distinguishable and does not serve as adequate notice that the actions of the Officers in this case violated clearly established law. In *Kisela*, the court held that the use of deadly force was not clearly established as excessive when an officer shot a suspect *approaching* a third party with a brandished knife. OB, pp. 54-56; *Kisela v. Hughes*, 584 U.S. 100, 105-06 (2018). Instead, Appellees erroneously argue that cases whose circumstances are even *more* removed from *Kisela* clearly establish that the Officers used excessive force in this case, or that the excessive force was "obvious." AB at 35-41.

Appellees discuss the *Bryan* case in support of their argument. The *Bryan* court did not fully describe the facts, but described some of the key facts for its ruling: (1) the officers entered into Bryan's apartment, (2) Bryan believed they

were unlawful intruders, and (3) the parties disputed whether the police identified themselves as police before shooting. *Bryan v. Las Vegas Metropolitan Police Department*, 349 F.App'x 132, 135 (9th Cir. 2009). The *Bryan* court held qualified immunity was not available because it was disputed whether the officer announced themselves. *Idem*. Nothing indicates that Bryan attacked a third party, or that the officers reasonably believed that Bryan posed an imminent threat to themselves or another person. No information suggests whether the officers entered the apartment based on a 911 call, whether they had a warrant, or any of the background information necessary to analogize the *Bryan* case to the circumstances here. Without such information, no officer would know what standard, if any, the court established – and the paucity of the facts make it impossible to *clearly* establish any particular prohibition on the use of force, or put the officers on notice.

Next, Appellees discuss *Curnow*, where the parties had a material dispute about whether the suspect was armed, and whether the suspect pointed his weapon at an officer after fleeing. *Curnow By & Through Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991). Taking the facts in the light most favorable to the non-moving party, the *Curnow* court reasoned that qualified immunity was not appropriate when assuming that officers shot Curnow while *visibly unarmed* and when Curnow did not threaten the officers or anyone else. *Idem*. Other courts have since interpreted *Curnow* to stand for the general proposition that "deadly force is

30

unreasonable where the victim does not directly threaten the officer with the gun." *Estate of Lopez by & through Lopez v. Gelhaus*, 871 F.3d 998, 1020 (9th Cir. 2017); *see also Hurtado v. State of California*, 2023 WL 4054530, at *9 (E.D. Cal. June 15, 2023, No. 2:19-CV-02343-DAD-AC) ("*Curnow* clearly established the legal principle that… officers cannot use deadly force against a suspect who is not facing them and does not threaten them with a weapon, even if a weapon is within the suspect's reach at the time"). The holding in *Curnow* is not applicable here, where Mr. Miller never possessed a gun, and the Officers never believed Mr. Miller threatened them. *Curnow* does not clearly establish a constitutional violation when officers see a suspect attacking a trapped victim, making motions consistent with stabbing, and reasonably believe that the suspect is armed with a knife. *See generally Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents").

Appellees next rely on *Figueroa* for the proposition that deadly force is clearly excessive when suspects "did not have weapons on their persons, brandish weapons, or threaten to use them—even if the officers believed the decedents were armed." *Figueroa v. Gates*, 207 F.Supp.2d 1085, 1093 (C.D. Cal. 2002). In *Figueroa,* the court held that qualified immunity was not available when officers shot two suspects in the back when they believed the suspects were armed, but the

31

suspects did not otherwise pose a threat. *Figueroa*'s holding is inapposite, where the only similarity is that the officers believed that the suspects were armed. In *Figueroa*, the suspects did not brandish, threaten or use any weapons. *Idem*. But here the Officers reasonably believed that Mr. Miller was stabbing Ms. Monks with a knife. OB at 21-27. In *Figueroa*, neither the officers nor a third party were threatened; here, Mr. Miller was attacking Ms. Monks when the Officers arrived.

Finally, Appellees erroneously contend that the *Espinosa* case stands for the proposition that officers cannot use deadly force when an unarmed suspect refuses to show their hands. AB at 39. In *Espinoza*, the officers entered and searched a house without a warrant in response to a non-emergency call from a neighbor reporting that the door to the residence was open and he suspected drug use. *Espinosa v. City & County of San Francisco*, 598 F.3d 528, 532 (9th Cir. 2010). After detaining one person, the officers heard a noise in the attic, and even though one of the officers suggested setting up a perimeter and approaching more cautiously, a different officer charged into the attic to confront the person, shooting them when the suspect did not immediately show his hands. *Idem*. Unlike in *Espinosa*, where the suspect was alone and in an attic; here, the Officers personally witnessed Mr. Miller attack Ms. Monks on public street, by trapping and pinning her in the cab of a car. And unlike in *Espinosa*, where the police responded to a non-emergency call, and entered a residence without a warrant or justification;

here, the Officers were responding to a 911 call that reported Mr. Miller attacking Ms. Monks with a knife on a public street after already attacking the person reporting with a knife.

### 2. Deadly Force was not "Obviously" Excessive in this Case

Appellees argue, without explanation or analysis, that the force the Officers used was "obviously" excessive "[h]ad the district court properly viewed these facts in the light most favorable to Plaintiffs." AB at 39-41. Appellees do not address the arguments Appellants made in the Opening Brief that the rulings in *Kisela* and *Ventura* show that the circumstances in this case are not "obvious" and law not clearly established. OB at 48-56 (Discussing *Kisela, supra*, 584 U.S. 100, and *Ventura v. Rutledge*, 978 F.3d 1088 (9th Cir. 2020)). Nor does Appellees address their obligation under *Waid* to "either explain why their case is obvious under existing general principles or, more commonly, show specific cases that control or reflect a consensus of non-binding authorities in similar situations." *Waid, supra*, 87 F.4th at 387-88.

### III. CONCLUSION

For these reasons, and for the reasons set forth in the Opening Brief, this Court should reverse the district court's order denying summary judgment to Officers Nunez and Velasco. This Court should hold that the Officers did not

33

violate Mr. Miller's Fourth Amendment rights, or alternatively, that any violation was not clearly established in January 2021.

Dated:   March 25, 2026

        HYDEE FELDSTEIN SOTO, City Attorney
        DENISE C. MILLS, Chief Deputy City Attorney
        KATHLEEN A. KENEALY, Chief Assistant City Attorney
        SHAUN DABBY JACOBS, Supv. Ass't City Attorney
        KYLE M. ELLIS, Deputy City Attorney

        By:  */s/  Kyle M. Ellis*
          **KYLE M. ELLIS**
          Deputy City Attorney

        Attorneys for Defendant and Appellant
        City of Los Angeles, Officer Daniel Nunez,
        Officer Antonio Velasco et al.

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 25-2911

I am the attorney or self-represented party.

**This brief contains** 6,994 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Kyle M. Ellis **Date** March 25, 2026
*(use "s/[typed name]" to sign electronically-filed documents)*

Feedback or questions about this form? Email us at forms@ca9.uscourts.gov

**Form 8** *Rev. 12/01/22*